**OREGON SHIPBUILDING CORPORATION et al. v. NATIONAL LABOR RELATIONS BOARD et al.**
**Civil Action No. 1744.**

District Court, D. Oregon.
Feb. 3, 1943.

Hart, Spencer, McCulloch & Rockwood, of Portland, Or., and Thelen, Marrin, Johnson & Bridges, of San Francisco, Cal., for plaintiffs.

William A. Babcock, of Seattle, Wash., and Richard A. Perkins, of San Francisco, Cal., for defendants.

JAMES ALGER FEE, District Judge.

This is a suit brought by two corporations under Kaiser control, which are building ships for the war effort, against the National Labor Relations Board, the members thereof and the trial examiner presently taking testimony in this District in a controversy involving subsidiaries of two national unions, American Federation of Labor and the opposite, Congress for Industrial Organization. The relief sought is injunction against this hearing. The American Federation of Labor unions by collective bargaining obtained "closed shop"[1] contracts with the plaintiffs. The ground for the hearing is the complaint filed by the Board charging plaintiffs with unfair labor practices in the entry of illegal "closed shop" contracts involving the American Federation of Labor locals. The ground claimed for the injunction is that two of three members of the National Labor Relations Board are biased and have pre-judged the case and have administratively held illegal the "closed shop" contracts between plaintiff and the American Federation of Labor unions. The court issued a show cause order which was served upon the examiner and others. Upon the day set to show cause, the National Labor Relations Board filed three motions, the first for quashing of summons, the second, resisting the issuance of temporary restraining order and the third, moving to dismiss the complaint. Reservation of rights by special appearance was made. Contrary to the custom of this court, no pre-trial conference was held, but the cause was treated as submitted on the argument of these motions.

Plaintiffs allege that they are not involved in any controversy with their employees over wages, hours of work or working conditions, but that if the Board decides as plaintiffs fear it will, because of the alleged pre-judgment of the cause

---

[1] These are not so designated as "closed shop" agreements in the complaint, but the inference is plain.

by two Board members, it will be impossible for plaintiffs to abide by their commitments to their employees, and this circumstance will subject plaintiffs to strikes and threats of strikes and will inevitably bring about serious discord and conflict between groups of employees of plaintiffs favoring rival organizations, and that such conflict and discord and strikes and threats of strikes will inevitably disturb the peaceful and harmonious relations which have prevailed since the beginning of plaintiffs' operations and which now exist, and will prevent plaintiffs from carrying out their obligations to deliver ships to the Maritime Commission for the prosecution of the war.

Notwithstanding the acceptance of the allegations of the complaint as true, it must be remembered that these members of the National Labor Relations Board are charged with the great responsibility of correctly settling such controversies in judicial manner and, therefore, each should be accorded the presumption of impartiality.[2] Simply because a judge of a court has taken a firm position upon a question of law or fact in the early stages of a case does not constitute a ground for challenge of his impartiality at trial. If a finding is colored by prejudice or partiality, an appropriate remedy will be found to prevent enforcement.

In view of this, plaintiffs have nothing to fear from a simple decision of the Board, but only the enforcement thereof. Therefore, they have nothing to fear at present from the continuance of the hearing, because even the decision of the Board of itself would have no weight except when backed by a judicial order. The only method of enforcement of the decision of the Board is by direction of the Circuit Court of Appeals before judges who have the same obligations as the judicial officers of this court. Such tribunals have demonstrated that the requirements of due process and fair trial before an impartial judge will be enforced[3] as to proceedings before the National Labor Relations Board.

In this case, the attitude of the trial examiner has not been a subject of attack, except insofar as he would be influenced by the position of the members of the Board. The hearings have been proceeding pending the action of this court, and may to all appearances continue without interruption. If the event prove that the Board, due to improper influences, has actually decided the cause incorrectly, the Circuit Court of Appeals could and, according to the authorities above cited, would correct the error, either by remand or in a proper case by its own decisions.

The intention of Congress to commit all such labor disputes to the Board was long ago noticed by this court.[4] Thus, full opportunity for judicial review has been provided in another tribunal. This court has not been granted power to intervene[5] for the sole purpose of depriving the National Labor Relations Board of the power of hearing and deciding the case.

But plaintiffs go further and allege that if the order based upon alleged bias and pre-judgment is entered, even before enforcement a whole swarm of evils will be unchained. Although the prayer of the complaint is for an order directed against the Board, its members and its examiner, if the realities be held in view, it will be discovered that this request for injunction actually constitutes an attempt to take a weapon away from one group of contending unions. It was made perfectly clear by the complaint and by the argument that the companies do not fear the action of the Labor Relations Board in and of itself, but rather the action that the excluded unions will take when their position is confirmed by the decision of the Board which plaintiffs claim they anticipate, or the action which the now dominant unions will take once the existing "closed shop" contracts are designated for avoidance by the Board and the now excluded unions attempt to exploit the situation which would then exist. If either group of unions or members thereof, without waiting for the action of the Board, did the acts which plaintiffs claim they fear, the effect would be the

---

[2] United States v. Morgan, Administratrix, 313 U.S. 409, 421, 422, 61 S.Ct. 999, 85 L.Ed. 1429.

[3] Inland Steel Co. v. National Labor Relations Board, 7 Cir., 109 F.2d 9; Berkshire Employees Association of Berkshire Knitting Mills v. National Labor Relations Board, 3 Cir., 121 F.2d 235.

[4] M & M Wood Working Co. v. Plywood & Veneer Workers Local Union No. 102, D.C.Oregon, 23 F.Supp. 11.

[5] Myers v. Bethlehem Shipbuilding Corporation, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638; Newport News Shipbuilding & Dry Dock Co. v. Schauffler, 303 U.S. 54, 58 S.Ct. 466, 82 L.Ed. 646.

same and the damage would be suffered, but the order of this court would be ineffective unless the unions were also placed under the ban. Actually and in effect, although indirectly, this injunction if issued would be as much against the unions and their members as if they had been named therein.

■ Thus the statements in the arguments and the allegations of the action, which plaintiffs claim they fear will cause irreparable damage, raise the question of the application of the restrictions of the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq. In order to determine the relation of such restrictions upon jurisdiction, this court has held the whole situation must be surveyed and the rights of third parties which are involved appraised and not only the "strictly legal rights but the attitudes and positions of the embattled unions, the situation of the employer, and the convenience, safety and well being of the people of the State of Oregon, to which, without class distinction, each of these individuals belongs",[6] weighed in the balance.

The only third parties whose rights may be apparently affected here are the individual workers whose fundamental interests may be injured or destroyed in this battle between the giants in the economic field. One of these in the eyes of a realist without prejudice is presently still "helpless to exercise actual liberty of contract and to protect his freedom of labor".[7] The complaint in this case reflects the fact that dominant unions have "closed shop" contracts with plaintiffs. This means that such unions can insist that the individual worker acquire or retain membership in that organization as the price of his right to work there. If the excluded unions attained their ends by ruling of the Labor Board or otherwise, experience shows that they would attempt to negotiate or take the benefits of a "closed shop" contract[8] and that the individual workers would be required to deal with them.

The position of the individual worker is vitally important in such a controversy, irrespective of the union with which he may be presently affiliated. As previous litigation in this area shows, internal dissension based on his feeling that a union is unrepresentative in character, or his hope for or fear of shift of affiliation, may cause absenteeism—of which the court takes notice from reports in the press—unrest or the disturbance and "increase of man hours required in vessel construction", which plaintiffs claim they fear. In any event, plaintiffs are powerless to represent this interest of their individual employees, because they would then subject themselves to a charge of "employer domination". As a practical matter, there is no way legally by action of Administrative Board or courts or otherwise to protect against a "slowdown", even in a vital war effort.

It is pertinent to inquire in what respect plaintiffs, according to the complaint, represent the interests of the public at large. Plaintiffs urge that the paramount public interest in the delay which may result from the industrial conflict now threatens the war effort. It is claimed the United States and the Maritime Commission will be damaged by a failure of the plaintiffs to deliver ships.

■ But this fear is illusory. The individual workers mentioned above are an indivisible part of the public. Rumors and threats of a broken agreement not to strike and of resulting disturbance may be discounted. Now that the war has come on, the American public intensely strives for a successful conclusion and the establishment of the guarantee that men can exercise liberty in this country in the future as in the past. The people who are making sacrifices and giving boys and girls to the armed services will take retribution of those who frustrate this idealism by internecine civil strife, to the detriment of the effort to prosecute the war. The history of labor in this state is proof of the fact that public opinion does control all factions.[9] While "the workers had the sympathy and co-operation of the public at large and members

[6] M & M. Wood Working Co. v. Plywood & Veneer Workers Local Union No. 102, supra.

[7] Declaration of principles, Norris-LaGuardia Act, 29 U.S.C.A. § 102.

[8] The history of the controversy in the M & M Wood Working Co. case clearly shows this.

[9] See M & M Wood Working Co. v. Plywood & Veneer Workers Local Union No. 102, supra; Chapter 2, Oregon Laws 1939; American Federation of Labor v. Bain, 165 Or. 183, 187, 215, 222–224, 106 P.2d 544, 130 A.L.R. 1278; State v. Rosser, 162 Or. 293, 335, 86 P.2d 441, 87 P.2d 783, 91 P.2d 295; State v. Reynolds, 164 Or. 446, 100 P.2d 593.

of legislative and other governmental bodies in the effort to free themselves from predatory machinations of unreconstructed employers", "by the bitter struggle for mastery, this sympathy may be transmitted into disgust". [10] It may be regarded as sure that public sentiment will appeal to the loyalty of the individual workers and that the shadow of military dominance over civil concerns need not be invoked to fulfill national aspirations.

It would be of some embarrassment to the dominant unions to apply to a federal trial court for an injunction under all the circumstances above portrayed. But in order to protect the position of the union and the "closed shop" contract, the employer plaintiffs are apparently required, in order to keep industrial peace, to bring this case. But, thereby, although plaintiffs have no method of protecting themselves or protecting the interests of the individual, they are parties to a labor dispute, even though their ultimate end is production of ships for war. The lethal spot in the position of plaintiffs is that neither the United States nor the Maritime Commission, which might well represent a disinterested public viewpoint, has intervened. In the present situation, this must be accepted as the test, and the conclusion follows that technically at least plaintiffs do not represent public interest.

It is noteworthy that there is presently no disturbance, no strike and no violence. One obvious ground for present interference is thus eliminated. The slowing of essential production by trials and hearings, which absorb the time of executives and assembly-line men alike, might suggest intervention. As a practical matter, such action simply compels more hearings, trials and delays. If plaintiffs were successful, one administrative board would hear the dispute between the rival unions with no guaranty that the body so substituted would be able to work out a more acceptable solution to both.

A technical grammatical construction of the Norris-LaGuardia Act might not uncover a prohibition to the action of this court. The court has heretofore remarked upon the intention of Congress to commit industrial disputes to administrative adjustment. With the recent holding of the Supreme Court of the United States that the Norris-LaGuardia Act created substantive, rather than purely procedural law, the implications are much stronger. [11]

Any court should follow the previous precedents, unreversed, as far as applicable, unless manifest and inescapable changes of situation demand change of doctrine. This empiric rule furnishes the community with a compass with variations for a guide rather than a weathercock. Therefore, so far as possible, the doctrines previously applied in such a situation by this court will be pertinent here. The court follows the lines laid down in the M & M Wood Working Co. case, which has been cited above.

Since there is neither fraud nor violence set up in the complaint, nor other salient factors, the statutory conditions precedent to the issuance of an injunction in a cause growing out of a labor dispute are not set up in this complaint.

The dire results of the failure of the court to issue an order of injunction have been portrayed. This charge cannot be laid on this doorstep. The jurisdiction which was removed from the federal district courts they are now prayerfully asked to resume by usurpation. [12] The court might under another situation and different facts come to another conclusion. Since, however, the interests of the public or third persons are not presented by plaintiffs, the court finds no jurisdiction. Fully conscious though the court be of the fact that by tradition and attitude the federal courts are equipped to deal with the situation thus presented and of the far-reaching consequences of its failure to intervene, the court cannot, even under stress of circumstances, violate the limitations of the law it is expected to administer.

The motion to quash service is denied. The motion for a restraining order is denied. The motion to dismiss is granted.

---

[10] M & M Wood Working Co. v. Plywood & Veneer Workers Local Union No. 102, supra [23 F.Supp. 17].

[11] United States v. Hutcheson, 312 U.S. 219, 61 S.Ct. 463, 85 L.Ed. 788.

[12] As has been aptly said by my colleague, Judge McColloch: "Extremes beget extremes. As stated, the whole course of recent labor legislation seems to have been determined by the unwillingness of some judges to accept and interpret with good will the progressive labor legislation of an earlier period." United States v. Dairy Cooperative Ass'n, D.C.Oregon, 49 F.Supp. 475, decided January 28, 1943.