J. F. QUEST FOUNDRY COMPANY v. INTERNATIONAL MOLDERS & FOUNDRY WORKERS UNION OF NORTH AMERICA, LOCAL NO. 132, AND OTHERS.[1]

February 11, 1944.

No. 33,751.

[1]Reported in 13 N. W. (2d) 32.

*Charles F. Noonan, Henry Halladay,* and *Dorsey, Colman, Barker, Scott & Barber,* for appellant.

*Douglas Hall* and *David Scribner,* for respondents United Electrical, Radio & Machine Workers of America, Local No. 1139, and R. W. Bergstrom.

*J. A. A. Burnquist,* Attorney General, *George B. Sjoselius,* Assistant Attorney General, and *David W. Lewis,* Special Assistant Attorney General, for respondent Leonard W. Johnson as state labor conciliator.

YOUNGDAHL, JUSTICE.

Plaintiff appeals from an order denying its motion for a temporary injunction and dissolving a restraining order theretofore issued.

Prior to 1943, a majority of the employes in plaintiff's foundry were members of defendant United Electrical Radio & Machine Workers of America, Local No. 1139, affiliated with the Congress of Industrial Organizations, hereinafter referred to as the C. I. O.

Union. Since 1937 this union has acted as the collective bargaining agent for plaintiff's employes. In 1942 negotiations were begun between plaintiff and defendant R. W. Bergstrom, as representative of the C. I. O. Union, which culminated in a contract dated July 13, 1943, executed by plaintiff, defendant Bergstrom as such representative, and a shop committee composed of three of plaintiff's employes. Under the terms of this contract, the C. I. O. Union was named as sole collective bargaining agent for all plaintiff's foundry employes with respect to rates of pay, hours of employment, and working conditions. The contract provided that it should become effective as of April 1, 1942, and so remain until April 1, 1944, and thereafter, unless either party should give written notice, as provided for therein, of a desire for a change in the agreement. A further provision was made in the contract "that the issue of wages may be reopened by either party giving 30 days' notice on or after September 1, 1943."

On September 25, 1943, defendant Hugo Benson, district representative for defendant International Molders & Foundry Workers Union of North America, Local No. 132, affiliated with the American Federation of Labor, hereinafter referred to as the A. F. of L. Union, wrote plaintiff a letter advising it that the A. F. of L. Union represented a majority of plaintiff's foundry employes and would take over the C. I. O. contract. Benson also gave plaintiff notice, pursuant to the provisions of that contract, of his desire to reopen it for the purpose of negotiating the issue of wages, and stated in his letter his increased demands.

Thereupon plaintiff filed its request with defendant Leonard W. Johnson, state labor conciliator, hereinafter referred to as the conciliator, for investigation and certification of a representative for collective bargaining, stating as its reason for such request the demand made by the A. F. of L. Union that plaintiff recognize and deal with it as the sole bargaining agent on behalf of plaintiff's employes. Pursuant to plaintiff's request for investigation, the conciliator held a hearing on October 11, 1943, which resulted in a notice by the conciliator to all parties in interest that an election

would be held on November 15, 1943, for the purpose of affording plaintiff's employes an opportunity to vote on the question of whether they would be represented for collective bargaining purposes by the C. I. O. Union or the A. F. of L. Union. A restraining order, issued at plaintiff's request, prevented the election from taking place. After due hearing and the taking of testimony on the question of whether a temporary injunction should issue, the court denied the motion and dissolved the restraining order.

The sole question here is whether the trial court erred in refusing to grant plaintiff's motion for a temporary injunction. Plaintiff's position is that, since there was in effect an unexpired contract between it and the C. I. O. Union as sole collective bargaining agent of its employes, any action on the part of the employes to become members of the A. F. of L. Union constituted an unfair labor practice as defined by the Minnesota labor relations act; that, more particularly, the demand of the A. F. of L. Union that it be recognized as the agent for collective bargaining on behalf of such employes was an unfair labor practice; that the conciliator's attempt to call an election was an effort to abrogate and annul the effect of plaintiff's contract with the C. I. O. Union; and that an injunction should be issued to prevent these acts. The conciliator and the A. F. of L. Union deny that such acts constituted unfair labor practices, assert that the election was lawfully called pursuant to the provisions of the labor act, and that plaintiff has shown no irreparable injury. On appeal, the A. F. of L. Union adopted the conciliator's brief. The C. I. O. Union, though a defendant below and respondent on appeal, filed its brief urging the acceptance of plaintiff's contentions.

■ Plaintiff relies primarily upon L. 1941, c. 469, § 7, Minn. St. 1941, § 179.11(1), which, insofar as here pertinent, reads as follows:

"It shall be an unfair labor practice:

"(1) For any employee or labor organization * * * to violate the terms and conditions of such bargaining agreement; * * *"

and that portion of L. 1941, c. 469, § 5, Minn. St. 1941, § 179.14, reading as follows:

"When any unfair labor practice is threatened or committed, a suit to enjoin such practice may be maintained in the district court of any county wherein such practice has occurred or is threatened."

Plaintiff's position is that the conduct of the A. F. of L. Union in soliciting a number of plaintiff's employes to become members in its union and, after procuring such members, making a demand for recognition by plaintiff under the contract, violated the terms and conditions of said contract so as to constitute an unfair labor practice, entitling plaintiff to injunctive relief under the foregoing provisions of the statute.

Upon the record before us, it is our opinion that plaintiff's application for a temporary injunction is premature. To be entitled to such extraordinary relief, plaintiff must bring itself within the well-established rule that the threatened injury must be real, substantial, and irreparable. 3 Dunnell, Dig. & Supp. §§ 4470, 4471, and cases there cited. The fact that a substantial number of plaintiff's employes signed membership cards in the A. F. of L. Union does not violate any of the terms and conditions of the bargaining agreement so as to constitute an unfair labor practice within the meaning of the statutes. Nor do we believe that the request made by the representative of the A. F. of L. Union in his letter to plaintiff to negotiate the wage issue was sufficient to constitute proof of such a threatened or actual unfair labor practice as is contemplated by the provisions of the labor relations act. No action was taken by the A. F. of L. Union to enforce its request by picketing, strike, or other means. The provisions of the contract are still in full force and effect. The record therefore fails to show any real, substantial, or irreparable injury to plaintiff as a result of the threatened or actual commission of an unfair labor practice, and plaintiff's request for injunctive relief is untimely. In Klein v. Herrick (D. C.) 41 F. Supp. 417, 424, the question decided was a party's right to injunctive relief in a situation similar to the case at bar except that the union sought the injunction. The court,

citing Rochester Tel. Corp. v. United States, 307 U. S. 125, 130, 59 S. Ct. 754, 757, 83 L. ed. 1147, held that the application for an injunction was premature, saying:

"* * * The long series of contingent events which may ultimately result in depriving plaintiff union of the benefit of the contract with the employer is too weak a foundation upon which to erect a claim to injunctive relief."

See also Oregon Shipbuilding Corp. v. N. L. R. Board (D. C.) 49 F. Supp. 386.

■ We hold further that the conciliator's attempt to call an election was neither contrary to the terms of the contract nor the provisions of the labor relations act (L. 1941, c. 469, § 6, Minn. St. 1941, § 179.16). Plaintiff premises its argument upon the fear that the election, if permitted, will result favorably to the A. F. of L. Union, following which certification will be made by the conciliator designating the A. F. of L. Union as the sole representative of plaintiff's employes for the purpose of collective bargaining. It is apprehensive that an attempt will then be made by the A. F. of L. Union to negotiate for wage increases under the present C. I. O. contract. The purpose of injunctive process is not to allay a litigant's fears or apprehensions. 3 Dunnell, Dig. & Supp. § 4470; Eastman v. United States (D. C.) 31 F. Supp. 754; Redlands Foothill Groves v. Jacobs (D. C.) 30 F. Supp. 995; Burlington Mills Corp. v. Textile Workers Union (D. C.) 44 F. Supp. 699. The direction of an election is not a final order. It is but an intermediate step in a pending and undetermined investigation. N. L. R. Board v. Falk Corp. 308 U. S. 453, 60 S. Ct. 307, 84 L. ed. 396. The calling of an election does not command plaintiff to do or refrain from doing anything. It does not affect in any way the status of the contract, nor determine any right or obligation thereunder. It merely sets in motion the machinery prescribed by law for the ascertainment of a fact. In passing upon this question in Associated Press v. Herrick (D. C.) 13 F. Supp. 897, 900, the court said:

"Certification by the board of the names of representatives select-

ed by the complainant's employees will constitute no more than a mere finding of fact without mandatory effect. * * * A finding of fact in itself is no basis for injunctive relief. United States v. Los Angeles & Salt Lake R. Co., 273 U. S. 299, 47 S. Ct. 413, 71 L. Ed. 651."

The conciliator is empowered under the provisions of § 179.16 to investigate controversies concerning the representation of employes for the purpose of collective bargaining, and to certify the name or names of such representatives as have been designated. In such investigation the conciliator may hold an election and take the secret ballot of the employes concerned. In the instant case, the conciliator, at the request of plaintiff, conducted an investigation and proceeded only so far, when restrained, as to give notice of the election. It cannot be said with certainty at this time what the results of such an election would be. It is possible that it might be determined that the C. I. O. Union continue as the exclusive bargaining agent of plaintiff's employes, since a majority of them are still members of that union. In any event, it is purely speculative now to determine that the results would be such as to constitute irremediable damage to plaintiff. Injunctive relief cannot be given for what is a mere assumption of a possible result. Burlington Mills Corp. v. Textile Workers Union (D. C.) 44 F. Supp. 699, *supra*. Some irremediable damage must be shown to establish a case for equitable relief. 3 Dunnell, Dig. & Supp. § 4471; Heller Bros. Co. v. Lind, 66 App. D. C. 306, 86 F. (2d) 862, and cases there cited.

We hold, therefore, that the lower court correctly denied the motion for a temporary injunction. Since we conclude that this action for injunctive relief has been prematurely brought, the legal effect of the bargaining provision of the contract with the C. I. O. Union and what would be an adequate remedy for plaintiff in the event that it should be found that a breach of the contract was imminent are questions not properly before us for determination at this time.

Affirmed.