UNITED RETAIL & WHOLESALE DEPARTMENT STORE EMPLOYEES OF AMERICA, LOCAL 174 (C. I. O.), Respondent, vs. WISCONSIN EMPLOYMENT RELATIONS BOARD, Appellant.

*September 15—October 10, 1944.*

For the appellant there were briefs by the *Attorney General, James Ward Rector,* deputy attorney general, and *Beatrice Lampert,* assistant attorney general, and oral argument by *Mrs. Lampert.*

*A. W. Richter* of Milwaukee, for the respondent.

FRITZ, J. The order, which the United Retail & Wholesale Department Store Employees of America, Local 174, C. I. O. (hereinafter called the "union"), petitioned the circuit court to review, was made by the Wisconsin Labor Relations Board (hereinafter called the "board"), after a hearing pursuant to a petition filed by A. Goldmann & Sons, as an employer. In that petition the employer requested that a referendum by secret ballot of its employees be conducted by the board, pursuant to sec. 111.06 (1) (c), Stats., for the purpose of determining whether or not the required number of the petitioner's employees desire an "all-union agreement" between the employer and the union; and that the board certify the result of such referendum. The board's order provided that a referendum be conducted for said purpose under the board's direction. In support of the board's demurrer on the ground that it appears upon the face of the union's petition that the court has no jurisdiction to review the order in question, the board contends that its order, directing merely the conduct of the referendum, is not reviewable in court because there is no statutory provision authorizing such a re-

view. And as the union admits in its brief that "the right of review is entirely statutory," and that "the orders of the board are not reviewable unless made so by the statutes," it suffices on this appeal to determine solely the question as to whether there is any statute authorizing the court review sought by the union in this action.

The union contends that such a review of the order in question is authorized by the provisions in sec. 111.07, Stats. (so far as pertinent here), that,—

"(1) Any controversy concerning unfair labor practices may be submitted to the board in the manner and with the effect provided in this chapter, . . ."

and that,—

"(8) [As amended by ch. 375, Laws of 1943—see margin [1]] The order of the board shall also be subject to review in the manner provided in chapter 227, except that the place of review shall be the circuit court of the county in which the appellant or any party resides or transacts business."

Those provisions the union claims are made applicable and authorize the court review sought by reason of (A) the provision in the seventh sentence in subd. (c) of sec. 111.06 (1), Stats., which reads, "Any person interested may come before the board as provided in section 111.07 and ask the performance of this duty;" and (B) the provision in the first sentence in subd. (c) which reads, ". . . provided, that an employer shall not be prohibited from entering into an all-union agreement with the representatives of his employees in a collective-bargaining unit, where at least three-quarters of such employees voting (provided such three-quarters of the employees also constitute at least a majority of the employees

---

[1] Ch. 375, Laws of 1943, entitled "An act to recreate Title XVIII and chapter 227 of the statutes, relating to administrative procedure and judicial review, and to make uniform the law with relation thereto. . . ."

in such collective-bargaining unit) shall have voted affirmatively by secret ballot in favor of such all-union agreement in a referendum conducted by the board." The union contends that because in this provision in that first sentence there is the statement in relation to "a referendum conducted by the board," and because in the seventh sentence in the same subd. (c) there is the provision that "any person interested may come before the board as provided in section 111.07 and ask the performance of this duty," it was the legislative intent that questions raised under sec. 111.06 (1) (c), Stats.,—including questions in relation to such a referendum,—should be handled as controverted matters under sec. 111.07, Stats.; and that, therefore, under sub. (8) of sec. 111.07, Stats., a court review of the board's order for a referendum is authorized.

Those contentions cannot be sustained. The fact that in the first sentence in sec. 111.06 (1) (c), Stats., there is the statement in relation to "a referendum conducted by the board" does not render the board's order for a referendum subject to such proceedings and review as are authorized under the provision in the seventh sentence in sec. 111.06 (1) (c), Stats., that "Any person interested may come before the board as provided in section 111.07 and ask the performance of *this duty*." By reason of the use of the demonstrative term "this duty," in that provision in the seventh sentence, and by reason of the context of that provision and the provision in the immediately preceding, sixth sentence, in sec. 111.06 (1) (c), Stats., which reads:

"The board shall declare any such all-union agreement terminated whenever it finds that the labor organization involved has unreasonably refused to receive as a member any employee of such employer, and each such all-union agreement shall be made subject to this duty of the board,"—

it is evident that the purpose and scope of the review under sec. 111.07, Stats., intended to be authorized by the provision

in that seventh sentence, were obviously intended to be limited to controversies arising in respect to the performance of solely the duty imposed upon the board by the provision in that sixth sentence, viz., the duty to declare an all-union agreement terminated whenever it finds that there existed the circumstances stated in the sixth sentence. It is in respect to solely the duty thus imposed that "Any person interested may come before the board as provided in section 111.07 and ask the performance of *this* duty;" and it is for only this limited purpose, which is thus definitely stated, that there is authorized thereby resort for relief under sec. 111.07, Stats.

It is also contended by the union that a court review of the board's order is authorized under the following statutory provisions:

Sec. 227.15, Stats. "Administrative decisions in contested cases, whether affirmative or negative in form, except . . . shall be subject to judicial review; but if specific statutory provisions require a petition for rehearing as a condition precedent, review shall be afforded only after such petition is filed and determined."

Sec. 227.16, Stats. "Except as otherwise specifically provided by law, any person aggrieved by a decision in a contested case and directly affected thereby shall be entitled to judicial review thereof under this chapter. . . ."

In sec. 227.01 (3), Stats., the term "contested case" is defined to mean—

"a proceeding in which the legal rights, duties or privileges of specific parties are required by law to be determined by decisions or orders addressed to them or disposing of their interests, after opportunity for hearing."

These provisions are not applicable to the order for a referendum, which is involved in this action, and there can be no court review thereof for the following reasons. There is nothing in ch. 111, Stats., that can be deemed to require a determination of legal rights, duties, or privileges of any

specific party before a referendum may be ordered or held under sec. 111.06 (1) (c), Stats.; or that requires the board to issue a decision or order addressed to any specific party, before it orders a referendum. Neither does such an order dispose of any interests of a specific party. The board's order for the conduct of a referendum election, as likewise its conduct thereof, is merely fact-finding procedure; and in the conduct thereof to determine the wishes of employees respecting an all-union agreement, the board acts in merely a ministerial capacity. The result of the referendum represents the desire of solely the employees themselves; and the board functions as but a disinterested investigator or supervisor to ascertain that desire. *J. F. Quest Foundry Co. v. International M. & F. W. Union,* 216 Minn. 436, 441, 13 N. W. (2d) 32. To the acts of the board in ordering and conducting and certifying the result of a referendum there is applicable, by analogy, the court's statement in *Southern S. S. Co. v. National Labor Relations Board* (3d Cir.), 120 Fed. (2d) 505, 506—

"A certification proceeding is of a nonadversary, fact-finding character in which the board plays the part of a disinterested investigator seeking merely to ascertain the desires of the employees as to their representation."

See also *National Labor Relations Board v. Botany Worsted Mills* (3d Cir.), 133 Fed. (2d) 876, 882, in respect to an investigation preliminary to an election, to wit:

"The preliminary investigation and the hearing in the representation proceeding are not contentious litigation; not even litigation, but investigation."

Moreover, under sec. 227.16, Stats., the only person entitled to the judicial review of a decision of the board in a contested case is "any person *aggrieved* by a decision in a contested case and *directly affected* thereby." There is *no showing* in the union's petition that it has been aggrieved. It is

not directed by the order to do or to refrain from doing anything. As the court said in *J. F. Quest Foundry Co. v. International M. & F. W. Union, supra,*—

"The calling of an election does not command plaintiff to do or refrain from doing anything. It does not affect in any way the status of the contract, nor determine any right or obligation thereunder. It merely sets in motion the machinery prescribed by law for the ascertainment of a fact."

If the result of a referendum should prove favorable to an all-union contract, the union would probably be actually benefited by the board's action, rather than aggrieved. On the other hand, if more than one-quarter of the employees should vote against an all-union agreement, the situation or rights of the union would probably be no less favorable than it is before any vote is taken. As a union has no right to induce an employer to enter into an all-union contract where there has been no vote by the employees (*Wisconsin E. R. Board v. Milk, etc., Union,* 238 Wis. 379, 396, 299 N. W. 31), it is in no better position when no vote has been taken than it is when there has been an unfavorable vote.

*By the Court.*—Order reversed, with directions to sustain the demurrer.