Robert P. HOWE, Appellant,

Citizen's State Agency of Fulda, Inc., et al., Plaintiffs,

v.

Robert E. HOWE, Respondent,

and

FEDERAL DEPOSIT INSURANCE COR-PORATION, in its capacity as Receiver of Citizen's State Bank of Fulda, Minnesota, Plaintiff-Intervenor, Respondent,

v.

Robert P. HOWE, Appellant,

Robert E. Howe, Respondent,

Citizen's State Credit Company, Defendant.

No. CX–85–1594.

Court of Appeals of Minnesota.

April 1, 1986.

Thomas M. Fitzpatrick, John R. McDonald, LaCrosse, Wis., for Robert P. Howe.

Robert E. Howe, pro se.

Warren P. Quarnstrom, Marshall, Richard E. Alexander, Marvin A. Tenenbaum, M. Marshall Seeder, Chicago, Ill., John Murphy, Ann DuRoss, E. Whitney Drake, Washington, D.C., for Federal Deposit Ins. Corp.

Heard, considered and decided by HUSPENI, P.J., and FOLEY and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

Robert P. Howe appeals the trial court's order granting the Federal Deposit Insurance Corporation's (FDIC) motion to continue a temporary restraining order as a temporary injunction enjoining him and several others from investing, spending, secreting, or otherwise transferring any of their respective assets. We affirm.

### FACTS

Robert P. Howe was formerly the president and director of Citizens State Bank (bank) and is the president and director of Citizen's State Credit Company and Citizen's State Agency of Fulda, Inc., all of which are located in Fulda, Minnesota. Robert E. Howe is Robert P. Howe's son, and previously served as the executive vice-president of the bank and secretary-treasurer of Citizen's State Credit Company.

The bank failed, and in February 1985 the FDIC was appointed receiver. In June 1985, without notice to the FDIC, Robert P. Howe, along with the bank, Citizen's State Agency, and Citizen's State Credit Company, commenced suit against Robert E. Howe for an alleged conversion of bank funds, violation of state banking laws, and breach of fiduciary duties as an officer and director of the bank. Robert P. claimed $1,761,968 in actual damages and $5,000,000 in punitive damages.

On June 27, 1985, the trial court temporarily restrained Robert E. from "spending, encumbering, selling, giving away, using or otherwise disposing of any funds or property, except for ordinary living expenses, pending the outcome of the * * * action."

On the same day, Robert P. Howe caused the bank to be dismissed from the action.

The next day, June 28, Robert P. Howe assigned the Citizen's State Credit Company's only asset, a bond claim it filed with an insurance company for losses allegedly sustained because of Robert E.'s misconduct, to one of its creditors, the Federal Intermediate Credit Bank. The bond is in the amount of $1,350,000. Under the assignment, Robert P. Howe was personally released from all claims the Federal Intermediate Credit Bank might have against him.

On July 3, 1985, FDIC obtained leave to intervene in the action, and filed a complaint in intervention against Robert P. Howe, Robert E. Howe, and Citizen's State Credit Company. In particular, FDIC alleged in count VIII that Robert P. Howe breached his fiduciary duties by negligently overseeing, investigating, and determining that the loans purportedly made by the bank through Robert E. Howe were legitimate and bona fide transactions in the best interests of the bank. The FDIC also alleged that Robert P. Howe grossly mismanaged loan office personnel with the result that improvident and improper loans were made, damaging the bank at a minimum of $2,864,000. Furthermore, the complaint alleged that Robert P. Howe negligently placed Robert E. Howe in responsible senior positions. Finally, the complaint alleged that Robert E. Howe's breach of fiduciary duties damaged the bank by $2,864,000 and unjustly enriched him by a minimum of $2,114,000.

On July 11, 1985, based upon its petition and the affidavit of Richard Farrell, a commissioned bank examiner, the FDIC obtained a temporary restraining order against Robert P. Howe, Robert E. Howe, and the credit company, and prohibited them from depleting their respective assets, pursuing the bond claim filed with the insurance company, or from otherwise altering the status quo.

A commissioned bank examiner stated, by affidavit, that more than $1.8 million was improperly transferred from the bank to Citizen's State Credit Company, without authorization, by the fraudulent activities of Robert E. Howe; that the credit company purported to sell its preferred stock for a consideration of $250,000 when the stock was not validly issued, and other aspects of the purchase were improper; and that at the time of the bank's closing, the credit company owed the bank $250,000 plus interest in promissory notes. Farrell also stated that the assignment of the credit company's major asset to the Federal Intermediate Credit Bank by Robert P. Howe rendered the credit company insolvent. Finally, Farrell concluded by stating:

*I believe that a substantial possibility exists that the interests of the Bank could be irreparably injured, and substantial loss and damage to the Bank would occur* unless R.E. Howe, R.P. Howe, and the Credit Company, and those acting in concert with them, are enjoined from making any transfers or concealing or attempting to conceal, their assets and assets obtained by them from the Citizen's State Bank of Fulda by means of fraud, concealment or misappropriation of the funds and assets of said bank.

(emphasis added).

Robert P. Howe points out that the FDIC petition is not in affidavit form and contains only unsworn allegations, including a statement that Robert P. Howe's lawsuit could become collusive due to a number of stated factors.

On July 22, 1985, the trial court held the FDIC was entitled to the continuation of the temporary restraining order as a temporary injunction based on the record unless Howe could show the injunction should not be granted.

Robert P. Howe testified that, as one of five bank directors who approved loans later determined to be fraudulent, he did not know of the money shortage in the bank until the FDIC examiner so informed him. He also testified that he never conspired with his son to wrongfully divert money, and he asked the court for permission to use $200,000 of his own personal assets to

pay off and settle an unsecured debt of $350,000. FDIC responded that this was the type of depletion of assets it sought to avoid by the temporary injunction. As a final matter, Robert P. Howe requested that FDIC be required to post a bond under Rule 65.03 of the Minnesota Rules of Civil Procedure if the injunction were granted. The trial court responded it was unsure it had the power to direct a federal agency to post bond, and one was never required.

The trial court continued the temporary restraining order as a temporary injunction, and Robert P. Howe appeals pursuant to Rule 103.03(b) of the Minnesota Rules of Civil Procedure.

## ISSUES

1. Did the trial court abuse its discretion in granting the temporary injunction restraining Robert P. Howe from spending, transferring, or secreting his personal assets, except for personal living expenses, without further order of the court?

2. Did the trial court abuse its discretion in refusing to require the FDIC to post bond?

## ANALYSIS

### I

■ "A temporary injunction may be granted if by affidavit, deposition testimony, or oral testimony in court, it appears that sufficient grounds exist therefor." Minn.R.Civ.P. 65.02(2). The party seeking an injunction must establish that the applicable legal remedy is inadequate, and that the injunction is necessary to prevent "great and irreparable injury." *Cherne Industrial, Inc. v. Grounds & Associates, Inc.*, 278 N.W.2d 81, 92 (Minn.1979). In addition, the following factors must be considered:

(1) the nature of the relationship between the parties before the dispute giving rise to the request for relief;

(2) the harm to be suffered by the moving party if the preliminary injunction is denied as compared to that inflicted on the non-moving party if the injunction issues pending trial;

(3) the likelihood of success on the merits;

(4) the public interest; and

(5) administrative burdens in enforcing a temporary decree.

*Paradata of Minnesota v. Fox*, 356 N.W.2d 852, 854 (Minn.Ct.App.1984), *pet. for rev. denied*, (Minn. Feb. 6, 1985) (citation omitted). *See also Dahlberg Brothers, Inc. v. Ford Motor Company*, 272 Minn. 264, 274–75, 137 N.W.2d 314, 321–22 (1965) (court enumerates the same factors).

■ The granting of an injunction rests within the sound discretion of the trial court, "and its action will not be disturbed on appeal unless, based upon the whole record, it appears that there has been an abuse of such discretion." *Cherne*, 278 N.W.2d at 91 (citation omitted). When reviewing the trial court's decision, "this court will view the facts alleged in the pleadings and the affidavits as favorably as possible to the party who prevailed below." *Paradata of Minnesota*, 356 N.W.2d at 854 (citation omitted).

### 1. Irreparable Harm

Robert P. Howe argues no evidence supports a finding that the temporary injunction was necessary to prevent irreparable harm. He asserts that the only evidence before the court pertaining to irreparable injury was the affidavit of the bank examiner, in which he *concludes* the bank could be irreparably injured if the injunction were not granted without specifying the nature of the injury. Howe argues that the FDIC's petition for a temporary injunction may not be considered because it is not a sworn statement.

The FDIC counters that without the injunction, Howe would deplete his assets, pointing out Robert P. Howe's testimony that he wanted to use $200,000 of his assets to pay off an unsecured loan. FDIC also notes the assignments of Robert P. Howe's interest in the claimed bond to a creditor of the credit company and the allegedly collusive nature of Robert P.

Howe's initial lawsuit as further evidence of likely irreparable injury thwarting its function as the bank's receiver if the temporary injunction is declared void.

FDIC claims that no hardship is worked on Robert P. Howe because the injunction exempts personal living expenses from its coverage.

### 2. Inadequate Legal Remedy

Robert P. Howe contends that "FDIC has an adequate remedy at law because the agency can be compensated in damages" and, in addition, upon obtaining a judgment, FDIC could recover funds fraudulently conveyed under the Minnesota Uniform Fraudulent Conveyance Act. *See* Minn.Stat. § 513.20 et. seq. (1984). Consequently, FDIC cannot, as in a common negligence lawsuit, attach his assets before judgment.

### 3. Likelihood of Success on the Merits

Robert P. Howe argues that FDIC's basic claim is one of negligence, and, since there is nothing in the form of affidavits or testimony supporting its allegations, and because the trial court made no express findings in this regard, there is no strong likelihood that FDIC will prevail on the merits.

FDIC responds that Robert P. Howe's neglect as an officer of the bank to oversee and monitor its operations is admitted by his statement that "[i]f you can't trust your own son who else can you trust," which is hardly a substitute for diligence, supervision, and utmost care in management. According to FDIC, this is sufficient to show the likelihood of success on the merits.

### 4. Public Policy and Administrative Burdens

FDIC admitted at the hearing that the injunction would amount to pre-judgment attachment of Robert P. Howe's assets, which is permitted only upon a showing that the defendant intended to defraud or delay his creditors. *See* Minn.Stat. § 570.-02, subd. 2(5)(b)(2) (1984). Robert P. Howe

claims there is no evidence that he intended to defraud or delay his creditors.

FDIC claims maintenance of the state banking system and the FDIC's role when a bank fails requires upholding the trial court's temporary injunction, adding that the injunction entails no administrative burdens.

### 5. Relationship Between the Parties

FDIC argues that the relationship between a director or officer of a bank and a bank requires close judicial scrutiny, and, therefore, Robert P. Howe's conduct requires "exacting examination * * * under a rigorous standard of diligence, good faith and honesty."

### 6. Burden

As a final matter, Robert P. Howe argues the trial court improperly placed the burden on him to present evidence showing that the injunction was improper.

We conclude the trial court did not abuse its discretion in continuing the temporary restraining order as a temporary injunction against Robert P. Howe. The trial court could have reasonably concluded that the injunction was necessary to prevent asset depletion, and protect the FDIC's ability to perform its statutory functions. The record indicates that Robert P. Howe's activities are closely related to many issues in this case, and thus the trial court could have concluded that an injunction restraining Howe from transferring assets was necessary to avoid irreparable injury. In addition, the trial court could have reasonably determined that FDIC's legal remedies were inadequate. While FDIC seeks damages, a damage award will only provide relief for past wrongs; injunctive relief is necessary to protect against future harm. *See Cherne*, 278 N.W.2d at 95 (in the context of a contract breach, court stated that whether plaintiff receives damages, an injunction, or both "depends upon what is necessary to recompense him for past injury and to prevent future injury"). Based on the fore-

going reasons, we affirm the trial court's granting of a temporary injunction.

## II

Rule 65.03(1) provides that:

"[n]o * * * temporary injunction shall be granted except upon a giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained."

■ FDIC claims it was not required to post security because rule 65.03 does not set a minimum requirement. Thus, according to FDIC, the trialcourt has discretion to waive security. Furthermore, FDIC argues it represents the state banking commission, and state officers are exempted from posting bond. *See* Minn.Stat. § 574.-205 (1984). To this particular argument, Howe responds that Minn.Stat. § 48.57 does not provide that the FDIC works on behalf of the banking commissioner. *See* Minn.Stat. 48.57 (1984).

On appeal, this court must determine whether the trial court abused its discretion in waiving security. *See Paradata of Minnesota,* 356 N.W.2d at 855 (citation omitted). "[T]he amount of security required on a temporary injunction is within the trial court's discretion *and may be waived entirely if appropriate." Bio-Line, Inc. v. Wilfley,* 366 N.W.2d 662, 665 (Minn.Ct.App.1985), *pet. for rev. denied,* (Minn. June 27, 1985) (emphasis added)(citing *Petition of Giblin,* 304 Minn. 510, 525–26, 232 N.W.2d 214, 222–23 (1975)). Waiving bond was within the trial court's discretion, and we conclude the trial court did not abuse its discretion in refusing to require the FDIC to post bond.

## DECISION

The trial court's issuance of a temporary injunction did not constitute an abuse of discretion. The trial court's waiver of bond did not constitute an abuse of discretion.

Affirmed.