**COUNTY OF WRIGHT, Respondent,**

v.

**Glen E. LITFIN and Arlene Litfin, husband and wife, Appellants.**

No. C4-85-2076.

Court of Appeals of Minnesota.

May 6, 1986.

William S. MacPhail, Buffalo, for respondent.

Glen E. Litfin and Arlene Litfin, pro se.

Heard, considered and decided by FOLEY, P.J., and SEDGWICK and NIERENGARTEN, JJ.

### OPINION

NIERENGARTEN, Judge.

Arlene and Glen Litfin appeal the trial court's judgment of October 9, 1985 finding them in violation of a number of Wright County zoning ordinances and restraining them from utilizing their property in several proscribed ways.

### FACTS

Appellants Glen and Arlene Litfin purchased property in Wright County in 1962 and 1964. The property is zoned for general agricultural use and is located within the

flood plain district and the shoreland district of the Crow Wing River.

Litfin claims he has continuously used his property in his construction and "towing" businesses since the time of purchase, and that he has never used his property for any other purpose. Litfin employs twenty-eight to thirty-two people.

Respondent Wright County (County) describes the Litfins' property as a junkyard, noting that the Litfins have on the property approximately forty "unlicensed vehicles in various states of disrepair," most of which are inoperable and have not been moved for years. The County also notes that the Litfins have placed on their land a number of piles of scrap metal, refuse, and other materials such as corrugated metal sheets, plumbing fixtures, scrap lumber, tires, demolition materials, barrels, machinery parts, cables, a complete roof from an old building, old appliances, and concrete fixtures. The County adds that Litfin has continued the mining and extraction of gravel since November 1977 without a mining permit. Moreover, the County points out that the property has been altered several times without obtaining the necessary permits. Finally, the County notes that the property has a big hole in which Litfin has dumped fill, brush, trees, demolition material, concrete and iron.

Because the Litfins' property has a low elevation relative to a nearby level of the Crow River and groundwater table, the County determined that the property was a "significant pollution risk" because rainwater runoff "carries fluids, oils and greases from the junk vehicles and machinery" and because chemicals left in abandoned barrels and other miscellaneous refuse and materials flow into the river and water table.

Finding the Litfins to be in violation of a number of zoning ordinances, the County sought to restrain the Litfins from hauling or dumping more materials on the property, from placing or continuing to maintain inoperable vehicles on the property, from continuing to operate a junkyard, from continuing to mine gravel, from continuing to alter the land, and from continuing to store and maintain piles of scrap materials and refuse outside of an enclosed container.

In response, the Litfins asserted that dikes prevent river water from flooding their property and prevent runoff water from their land from flowing into the river. The County denies the dikes are effective. The Litfins argued their land was a nonconformity that they had a right to continue under state law and the zoning ordinances, and that a temporary injunction would cause them irreparable harm.

The trial court determined that the Litfins were in violation of a number of zoning ordinances and enjoined them from using their property in certain proscribed ways. The Litfins appeal.

## ISSUE

Did the trial court abuse its discretion in granting Wright County a temporary injunction restraining the Litfins from using their property in a manner proscribed by county zoning ordinances?

## ANALYSIS

The granting of a temporary injunction rests within the sound discretion of the trial court, and "the sole question presented on appeal is whether there was clear abuse of such discretion by the trial court by a disregard of either the facts or the applicable principles of equity." *Cramond v. AFL–CIO*, 267 Minn. 229, 234, 126 N.W.2d 252, 256–57 (1964) (footnote omitted).

In seeking an injunction the County must establish that the applicable legal remedy is inadequate, and that the injunction is necessary to prevent "great and irreparable injury." *Cherne Industrial, Inc. v. Grounds & Associates, Inc.*, 278 N.W.2d 81, 92 (Minn.1979). In addition, the following factors must be considered:

(1). The nature and background of the relationship between the parties preexisting the dispute giving rise to the request for relief.

(2). The harm to be suffered by plaintiff if the temporary restraint is denied as compared to that inflicted on defendant if the injunction issues pending trial.

(3). The likelihood that one party or the other will prevail on the merits when the fact situation is viewed in light of established precedents fixing the limits of equitable relief.

(4). The aspects of the fact situation, if any, which permit or require consideration of public policy expressed in the statutes, State and Federal.

(5). The administrative burdens involved in judicial supervision and enforcement of the temporary decree.

*Dahlberg Brothers, Inc. v. Ford Motor Co.*, 272 Minn. 264, 274–75, 137 N.W.2d 314, 321–22 (1965) (footnotes omitted).

The Litfins make two arguments. Their first argument is that the balancing of hardships is the most important factor. The Litfins contend the property is being used in the same manner it has been used for the last twenty years and the County, therefore, will not suffer irreparable harm if it has to wait for a determination after a trial on the merits. The Litfins state that "[t]he resulting hardship to the appellants, and their employer, by an injunction in this case is terrible."

The Litfins' second argument is that they owned the property prior to the adoption of an applicable zoning ordinance, and thus they possess a nonconforming use that is allowed continued existence under state law. *See* Minn.Stat. § 394.36, subd. 1 (1984).

The County counters that subdivision 2 of section 394.36 allows regulating and even gradual elimination of nonconforming uses. *See id.* The county asserts that the Litfin's property is a junkyard by county ordinance definition. *See* Wright County. Minn. Zoning Ordinance § 302(56). The ordinance also provides that no junkyard may continue as a nonconforming use for more than five years after the effective date of the ordinance (1978), *see id.* § 504.6, nor may such a junkyard be expanded or altered. *Id.* § 405.2. Accordingly, the Coun-

ty argues that an injunction may issue against the Litfins' property.

The County notes that the Litfins have "a long recorded history for violations of the mining and extraction regulations for [the] property dating back to at least 1971." Moreover, the Litfins have never obtained permits for the land uses they are presently practicing.

The County argues that the Litfins really suffer no hardship because the injunction does not require termination of their business operations or the release of their employees but is a remedy designed to assure compliance with the zoning ordinances. On the other hand, if the injunction is dissolved, the County asserts it will suffer irreparable harm because the public's health and safety will be endangered and a nuisance will continue in existence.

The County asserts that its chance of success on the merits is great, given the numerous ordinance violations found in the trial court's findings of fact. In addition, the public interest is great as this case concerns the public health, safety, and general welfare. Finally, the County contends that an injunction entails no administrative burdens.

Viewing this matter in a light most favorable to the County, as we must, *see Cramond*, 267 Minn. at 234–35, 126 N.W.2d at 256–57, we conclude that the trial court did not abuse its discretion in issuing the temporary injunction. The record supports the trial court's findings that the Litfins are utilizing their property in manner prohibited by the county zoning ordinances and that the continuing violation of the county ordinances will irreparably injure the County, which has no adequate remedy at law.

**DECISION**

The trial court did not abuse its discretion in issuing a temporary injunction.

Affirmed.