**ALLSTATE SALES AND LEASING COMPANY, INC., Respondent,**

v.

**Leon GEIS, et al., Appellants.**

**No. C9–87–473.**

Court of Appeals of Minnesota.

Sept. 15, 1987.

Richard D. Donohoo, Maun, Green, Hayes, Simon, Johanneson and Brehl, St. Paul, for appellants.

Timothy H. Butler, Ann L. Iijima, Lindquist & Vennum, Minneapolis, for respondent.

Heard, considered and decided by RANDALL, P.J., and SEDGWICK and LANSING, JJ.

## OPINION

SEDGWICK, Judge.

Respondent Allstate Sales and Leasing, Inc., ("Allstate") sued appellants, its ex-employees, to recover commissions it claims were improperly paid. This appeal is from a temporary injunction restraining appellants from spending the commissions and requiring them to deposit the amount at issue with the trial court as security for a potential judgment. We reverse those portions of the temporary injunction.

## FACTS

Allstate operates a truck dealership in South St. Paul. Until the fall of 1986, appellants were employees of Allstate:

Geis was its general manager, Tradup was its comptroller and Olson was a salesman.

In August 1986, Allstate learned that Geis was considering buying a truck dealership in Kansas City, Kansas. Allstate permitted him to seek financing while still employed. Later that month, however, Allstate fired him, effective September 1, 1986, claiming he had neglected his duties. On September 15, 1986, Tradup and Olson resigned from their positions with Allstate (Tradup's resignation was effective October 15) to work for the Kansas City business. (The record is unclear as to when or whether Geis bought the Kansas City business.)

In the spring and summer of 1986, Tradup issued Allstate checks to Olson totaling $102,355.81, as commissions or advances on commissions. On October 1, 1986, Allstate sued appellants for damages, alleging the checks were unauthorized overpayments. The next day, Allstate obtained an ex parte temporary restraining order enjoining appellants from spending "the $102,355.81" and ordering them to deposit that amount with the court or in an escrow account.

On October 7, 1986, the parties entered into a standstill agreement, under which both sides deposited $40,000 with their attorneys and Allstate agreed to have the temporary restraining order dissolved. The parties were unable to settle, however, and on January 7, 1987, appellants ended the standstill agreement.

On January 14, 1987, Allstate brought this motion for a temporary injunction. Its motion papers state the amount of the alleged overpayment is $40,190.68.

The trial court granted Allstate's motion on January 26, 1987. Its order provides:

[Appellants] are enjoined from spending, disbursing, or taking any other action in regard to all commission advances paid by Geis and Tradup to Olson which would be adverse to any claim of right which [Allstate] may have over the money;

\*      \*      \*      \*      \*      \*

[Appellants are] ordered to deposit the sum of $40,190.00 with the Dakota Coun-

ty Clerk * * * with said deposit to draw interest at the customary rate until further order of the Court.

The trial court's memorandum explains:

[I]mmediate and irreparable harm may result to [Allstate] by allowing the [appellants] to take the amount of $40,-190.00 with them to * * * Kansas, where they are setting up a competing business.

[P]ublic policy [would] be best served by not allowing [appellants] to make use of the amount of the alleged overpayment and thereby dissipate a potential asset if [Allstate] prevails.

### ISSUE

Did the trial court abuse its discretion by temporarily enjoining appellants from spending the commissions and ordering them to deposit the amount at issue with the court?

### ANALYSIS

■■■ A temporary injunction is an extraordinary equitable remedy that preserves the status quo until adjudication of the case on its merits. *Miller v. Foley,* 317 N.W.2d 710, 712 (Minn.1982). A prerequisite for injunctive relief is a clear showing that any legal remedy the party may have is inadequate. *E.g., Borom v. City of St. Paul,* 289 Minn. 371, 376, 184 N.W.2d 595, 598 (1971). The party seeking the injunction must also show that it is needed to prevent "great and irreparable injury." *Cherne Industrial, Inc. v. Grounds & Associates,* 278 N.W.2d 81, 92 (Minn.1979). The sole issue on appeal is whether the trial court clearly abused its discretion by granting the temporary injunction. *County of Wright v. Litfin,* 386 N.W.2d 757, 758 (Minn.Ct.App.1986).

We believe it was error to grant Allstate the temporary injunction, because Allstate did not show it lacked an adequate legal remedy in the attachment statute, Minn. Stat. §§ 570.01–.14 (1986), or that it would have suffered irreparable injury.

The temporary injunction was requested, and granted, only to provide security for a potential judgment in favor of Allstate. The attachment statute provides a means of obtaining such prejudgment security. *See* Minn.Stat. § 570.02, subd. 1. A party may attach the assets of an opposing party in accord with the statute's provisions any time after commencing a civil action for the recovery of money. Minn.Stat. § 570.01.

■■ The statute provides five exclusive grounds for attachment, two of which cover the situation Allstate claims exists here:

An order for attachment which is intended to provide security for the satisfaction of a judgment may be issued only in the following situations:

(1) when the respondent has assigned, secreted, or disposed of, or is about to assign, secrete, or dispose of, any of the respondent's nonexempt property, with intent to delay or defraud the respondent's creditors;

(2) when the respondent has removed, or is about to remove, any of respondent's nonexempt property from the state, with intent to delay or defraud the respondent's creditors * * *.

Minn.Stat. § 570.02, subd. 1 (1986).

Allstate did not argue in its motion papers, or in its brief, that the attachment statute afforded it an inadequate remedy. Its memorandum supporting its motion suggested the opposite:

A temporary injunction is particularly appropriate where, as here, the plaintiff seeks to secure the satisfaction of a judgment. Under Minn.Stat. § 570.01, plaintiff could have sought the similar, but more intrusive, remedy of attachment. * * * By this motion, Allstate has sought to protect its interests with the least intrusive method possible.

In granting the temporary injunction, the trial court did not address whether Allstate had an adequate legal remedy.

■■ At oral argument, Allstate contended attachment was inadequate because when it moved for the temporary restraining order and temporary injunction, it did not know whether appellants still had assets in Minnesota, since they were moving or had moved to Kansas. A state court

cannot attach assets located outside the state. 7 C.J.S. *Attachment* § 65 (1980).

We do not believe this argument justifies the extraordinary relief granted here. First, Allstate might have been able to prevent the removal of assets (assuming they were removed) by pursuing its legal remedies. The attachment statute provides for preliminary attachment orders, by which a parties' assets can be summarily seized without a hearing. Minn.Stat. § 570.025. Allstate could have sought a preliminary attachment order immediately upon bringing this action, to prevent the removal of assets from this state. In order to do so, however, Allstate would have had to satisfy the court that any removal of assets by appellants was with intent to defraud respondents. Instead of utilizing this legal remedy, Allstate immediately sought equitable relief (the temporary restraining order), and continued to seek such relief, without even alleging the attachment statute was inadequate. (The temporary restraining order is within this court's scope of review. *See* Minn.R.Civ. App.P. 103.04.) Allstate has the burden of showing the attachment statute would not have afforded it adequate relief, and it has not met that burden.

Second, Allstate has not shown that the temporary injunction is needed to prevent irreparable injury. It argues such injury would result because without the injunction appellants will spend the money, on the Kansas City business or otherwise, and once the money leaves appellants' hands, recovery will be much more difficult.

The basic flaw with this argument is that appellants' spending of the commissions, even out-of-state, does not necessarily pose a threat to the collectibility of a judgment for Allstate. Money is fungible. If Allstate wins at trial, it can execute its judgment on appellants' assets in Kansas (or elsewhere). An injunction should only be issued to prevent "real and substantial," not "imagined," injury. *AMF Pinspotters, Inc. v. Harkins Bowling, Inc.*, 260 Minn. 499, 504, 110 N.W.2d 348, 351 (1961). Allstate has offered no evidence that appel-

lants would not have sufficient assets to satisfy a judgment.

At oral argument, Allstate contended it would be irreparably injured by appellants' investment in the Kansas dealership because such ventures are risky. This contention is unsupported by affidavit or anything else in the record.

■ Temporary injunctions should only be issued in clear cases, and with great caution and restraint. *Id.* Strict compliance with the prerequisites for injunctive relief is especially important where, as here, there is an ostensible statutory remedy. *Cf. Adelman v. Onischuk*, 271 Minn. 216, 228, 135 N.W.2d 670, 678 (1965) (in context of assessment challenges, a statutory remedy generally precludes resort to equity).

The attachment statute provides a means of obtaining prejudgment collateral, but it requires the plaintiff to show specific circumstances exist, *see* § 570.026, subd. 3, and it grants the defendant certain procedural and substantive protections. For example, under the statute certain property is exempt from attachment. *See, e.g.,* § 570.-051, subd. 1(4). The statute's provisions for ex parte preliminary attachment orders were drafted to comply with due process requirements. *See Olson v. Ische*, 330 N.W.2d 710 (Minn.1983) (striking down earlier provisions as unconstitutional).

By obtaining injunctive relief rather than proceeding under the statute, Allstate was able, in effect, to attach appellants' assets without making the showing required by the statute or affording appellants the statute's protections. Such injunctive relief frustrates the intent of the legislature and makes the statute virtually meaningless, because this case is indistinguishable from countless others in which plaintiffs seek collateral for potential judgments.

Allstate argues this case is unique because (1) it involves self-help by appellants (they took Allstate's money); and (2) it is based, in part, on contractual provisions stating that when employment is terminated the employee must return all advances, and Allstate alone determines the amount of commissions owed the employee. Those

assertions raise issues yet to be litigated, however; this is not a motion for summary judgment. Even if liability were as clear as Allstate asserts, that would not make this case different from many others in which plaintiffs desire prejudgment attachment. Allstate's exception would swallow up the statute.

Allstate argues that case law shows the trial court's temporary injunction was within its discretion, relying primarily on *Howe v. Howe*, 384 N.W.2d 541, 542 (Minn.Ct. App.1986). In *Howe*, the FDIC was appointed receiver of a failed bank, and it sued former bank officials who had allegedly converted bank assets by making sham loans. We held it was within the trial court's discretion to grant the FDIC a temporary injunction restraining a bank official from spending, transferring, or secreting his personal assets, except for personal living expenses, without further order of the court. *Id.*

*Howe* does not support Allstate's position. In *Howe*, the injunction was upheld because it served to prevent future harm by stopping allegedly fraudulent activities:

> The trial court could have reasonably concluded that the injunction was necessary to prevent asset depletion, and protect the FDIC's ability to perform its statutory functions. The record indicates that [appellant's] activities are closely related to many issues in this case, and thus the trial court could have concluded that an injunction restraining [appellant] from transferring assets was necessary to avoid irreparable injury. In addition, the trial court could have reasonably determined that FDIC's legal remedies were inadequate. While FDIC seeks damages, a damage award will only provide relief for past wrongs; injunctive relief is necessary to protect against future harm.

*Id.* at 545.

Here, on the other hand, the injunction was granted not to prevent further injury by maintaining the status quo, but solely to provide collateral for a potential judgment for past alleged injuries. The other cases cited by Allstate are similarly distinguishable in that they involve injunctions sought to prevent future injury, not to provide security for damages already allegedly incurred. *See Shaffer v. Brooklyn Park Garden Apartments*, 311 Minn. 452, 250 N.W.2d 172 (1977) (temporary injunction sought to prevent payments of drafts drawn under irrevocable letters of credit based on allegedly false certifications that the money was due); *Cornell v. Upper Michigan Land Co.*, 131 Minn. 337, 155 N.W. 99 (1915) (defendant temporarily enjoined from transferring promissory notes, allegedly fraudulently obtained, to innocent purchasers).

Allstate also argues the temporary injunction was authorized by a provision of the attachment statute which allows courts to fashion relief in lieu of attachment. Minn.Stat. § 570.026, subd. 4 (1987). Such relief is expressly limited to circumstances where a claimant has shown that statutory grounds for attachment are present, but attachment is inappropriate for one of several specified reasons. *See id.* This section obviously does not apply here, because Allstate has never even attempted to show that grounds for attachment exist.

We do not hold that a court may never use its equity power to provide prejudgment collateral. But it may do so only, if ever, where the party seeking such equitable relief clearly shows it has no adequate legal remedy and the temporary injunction is needed to prevent great and irreparable harm. This is not such a case.

### DECISION

The portions of trial court's order restraining appellants from spending the commissions at issue (paragraph 1.A.) and requiring them to deposit funds with the court (paragraph 2.A.) are reversed. The provisions of the remainder of the order, the validity of which was challenged but not briefed by appellants, are affirmed. *See Swigerd v. City of Ortonville*, 246 Minn. 339, 341, 75 N.W.2d 217, 219 (1956).

Reversed in part.