STATE of Minnesota, by Stephen W. COOPER, Commissioner, Department of Human Rights, Petitioner, Respondent,

v.

SPORTS AND HEALTH CLUB, INC., etc., et al., Appellants.

No. C9–88–1908.

Court of Appeals of Minnesota.

April 11, 1989.

G. Barry Anderson, Arnold & McDowell, Minneapolis, for appellants.

Hubert H. Humphrey, III, Atty. Gen. and Richard L. Varco, Jr., Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered and decided by FOLEY, P.J., and FORSBERG and MULALLY *, JJ.

## OPINION

FOLEY, Judge.

This is an appeal from a temporary injunction issued by the trial court under Minn.Stat. § 363.06, subd. 4(4) (1986) to enjoin appellant Arthur Owens from transferring or disposing of any stock of Balti-

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

more Realty Company to Robert A. Williams and from pledging his BRC stock to any other person.[1] We affirm.

## FACTS

In *State, by McClure v. Sports & Health Club, Inc.,* 370 N.W.2d 844 (Minn.1985), *appeal dismissed,* 478 U.S. 1015, 106 S.Ct. 3315, 92 L.Ed.2d 730 (1986), the Minnesota Supreme Court affirmed an order of a hearing examiner holding that Owens and others were personally liable for numerous violations of the Minnesota Human Rights Act, Minn.Stat. § 363.01 et seq. (1986). Although liability was determined, the amount of damages to each individual claimant has not yet been determined.

Upon petition of respondent, State of Minnesota by Stephen Cooper, Commissioner, Department of Human Rights, the trial court issued an order on December 9, 1987 restraining Owens from selling or transferring stock and requiring Owens to give notice to the department of human rights before selling or transferring any assets in his name or under his control. The jurisdictional basis for the trial court's order was Minn.Stat. § 363.06, subd. 4(4), which provides in part:

> If, at any time after the filing of a charge, the commissioner has reason to believe that a respondent has engaged in any unfair discriminatory practice, the commissioner may file a petition in the district court * * * seeking appropriate temporary relief against the respondent, pending final determination of proceedings under this chapter, including an order or decree restraining the respondent from doing or procuring an act tending to render ineffectual an order the commissioner may enter with respect to the complaint. The court shall have power to grant temporary relief or a restraining order as it deems just and proper * * *.

On June 13, 1988, the Department of Human Rights received notice from Owens that BRC was going to sell 346 authorized but unissued shares of its stock to Williams for $800,000 and that Owens intended to pledge the remaining 86¼ shares of BRC stock to Arnold & McDowell to secure payment of attorney fees incurred and to be incurred in connection with various matters.

The Department of Human Rights then commenced an action to determine the validity of the stock sale and whether the stock pledge was necessary. After hearing testimony from both Owens and Williams, including Owens' previous deposition testimony, the trial court found:

> The proposed transfer to Williams is so lacking in consideration that it could give rise to a proceeding under M.S. § 513.44, Fraudulent Transfers. The main asset which is to be exchanged for the BRC stock is an unsecured demand note. Only Williams would have the power to make a demand on the note, since he would be the new majority shareholder after the proposed transfer. The other asset to be transferred in exchange for the stock is a piece of undeveloped property that has an assessed value of only $58,000. There is no requirement in the transfer agreement that Williams develop the property. Though Williams plans to develop it into residential property, it is now zoned agricultural. In effect, Williams is getting an asset worth between $800,000 and $1,100,000 for nothing, and in return, Owens is getting nothing.

The trial court further found that Owens did not know which properties Williams had developed, had not seen Williams' financial statements and did not examine the property that was to be transferred to BRC. Considering these facts, the trial court ordered:

> 1. Neither Owens nor his agents, employees, or attorneys shall sell, transfer, assign, or otherwise dispose of any stock of Baltimore Realty Company to Robert Williams.
>
> 2. Neither Owens nor his agents, employees or attorneys shall sell, transfer,

---

1. BRC is a closely held private corporation, and the issued stock is owned only by Owens and members of his immediate family. Owens has 83¼ shares, and his wife, daughter, and son-in-law, one share each.

assign, or otherwise dispose of his 83¼ shares of Baltimore Realty Company to Arnold & McDowell, or to any other person.

That order was filed on August 4, 1988, and this appeal followed.

## ISSUES

1. Did the trial court err in issuing a temporary injunction enjoining Owens from selling or transferring BRC stock to Williams and from selling or transferring 83¼ shares of that stock to any person pursuant to Minn.Stat. § 363.06, subd. 4(4) (1986)?

2. Did the trial court err by refusing to allow Arnold & McDowell or Baltimore Realty Company to participate in the hearing in this matter?

## ANALYSIS

### Standard of Review

The right to and the necessity for the granting or

refusal of * * * an injunction lies largely within the discretion of the trial court, whose action will not be disturbed on appeal unless from the whole record it appears that there has been an abuse of * * * discretion.

*AMF Pinspotters, Inc. v. Harkins Bowling, Inc.*, 260 Minn. 499, 504, 110 N.W.2d 348, 351 (1961) (citing *General Minnesota Utilities Co. v. Carlton County Cooperative Power Association*, 221 Minn. 510, 22 N.W.2d 673 (1946)).

Further, the Minnesota Human Rights Act provides that its provisions "be construed liberally for the accomplishment of the purposes thereof." Minn.Stat. § 363.11 (1986).

### Owens' BRC Stock

■ Owens admitted in his deposition that his stock was the only source of revenue available to him to pay judgments against him:

Q. Isn't it true that if you enter into this transaction with Mr. Williams and you pledge your stock to the law firms, that you will have no assets left to pay judgments with essentially? At least none of any value?

A. [By Owens] Well, that's true.

BRC essentially consists of a building and portion of land at 4917 Excelsior Boulevard in St. Louis Park, Minnesota, and Owens testified that the value of the stock was approximately $1,900 per share.

Owens argues that he is not attempting to violate the trial court's order and insists that he is not transferring or otherwise disposing of his assets. Instead, he asserts that he only proposes to *issue additional stock*, and he would own, after the transaction, exactly what he owned before the stock issuance. Owens failed to reveal, however, that when the additional shares of stock are issued, the value of his own stock will not remain the same.

### Owens' Proposed Stock Transaction

In return for the 346 shares of BRC stock, Williams agreed to pay BRC $800,-000 in the following manner: $200,000 by the transfer of real property located in Minnesota, and the remaining $600,000 by the delivery of an unsecured promissory note.

The trial court observed that the undeveloped real property which Williams intended to transfer to Owens has an assessed value of only $58,000. The trial court further found that the $600,000 unsecured promissory note was payable on demand to BRC. In effect then, Williams, as majority shareholder, held the power of collection over his own note.

Owens admitted he had not seen any of Williams' financial statements or tax returns, had never discussed with Williams his financial condition, knew very little about Williams' development activities, had no knowledge of any property that Williams had developed, and did not know Williams' address, phone number, or where he worked. Finally, although Owens claimed that BRC in its new form was going to be a development company, he did not know where the property was located, had never seen the land, did not know how much land was involved, and did not know how the land was zoned. Owens simply considered Williams "an astute developer,"

and claims he assumed that any development plans would increase the value of his BRC stock.

If damages are awarded, the assets, by virtue of the injunction, would be available to be applied toward satisfaction of any judgment. The trial court properly concluded that it would be unjust and inequitable for Williams to take control of this significant asset at the expense of the victims of Owens' discriminatory conduct.

*Trial Court Jurisdiction Over BRC*

■ Owens argues that since BRC is not a party to this action, the court lacked jurisdiction to enjoin it from issuing additional stock. The trial court, however, did have jurisdiction over Owens and over his ability to place his assets beyond the reach of persons damaged by his illegal conduct. *See* Minn.Stat. § 363.06, subd. 4(4). The trial court properly exercised its discretion restraining Owens from transferring, selling, or otherwise diminishing the value of his BRC stock.

*Owens' Argument Against Prejudgment Collection*

■ Owens' argues the state is actually attempting to enlist the trial court's assistance in a prejudgment collection effort against a nonparty and relies on *Allstate Sales and Leasing Co., Inc. v. Geis*, 412 N.W.2d 30 (Minn.Ct.App.1987), which is distinguishable on its facts. In *Allstate*, the trial court granted an injunction requiring a prejudgment deposit of funds with the court as security for a potential judgment. *Id.* at 32. This court vacated the injunction because it found the injunction was improperly issued since Allstate failed to make a showing that Minn.Stat. § 570.025 (1986) was an inadequate legal remedy and because Allstate made no showing of irreparable injury. *Allstate*, 412 N.W.2d at 33.

Here, the Department of Human Rights did not seek an injunction pursuant to Minn.R.Civ.P. 65. Instead, it proceeded pursuant to the authority granted to the district court in Minn.Stat. § 363.06, subd. 4(4). Accordingly, Owens' reliance on *Allstate* is misplaced. The trial court's temporary injunction was properly granted pursuant to the Minnesota Human Rights Act and we find no abuse of discretion here.

*Owens' Minn.Stat. § 549.01 (1986) Claim*

■ Owens next claims the order prohibiting him from pledging his stock to Arnold & McDowell was made in violation of Minn. Stat. § 549.01, which provides:

A party shall have an unrestricted right to agree with an attorney as to compensation for services, and the measure and mode thereof; but certain sums may be allowed to the prevailing party for expenses in an action, which are termed costs.

Owens relies on *Burns v. Valene*, 298 Minn. 257, 260, 214 N.W.2d 686, 689 (1974), for the proposition that a party has an unrestricted right to contract with his attorney regarding compensation for services and the manner and measure of payment. Minn.Stat. § 549.01 preserves the ability of clients and attorneys to agree to various *methods of compensation*, but it does not prohibit the interference with the financial resources which a client has. Accordingly, Owens' claim here is without merit.

*Owens' Argument Under Minn.Stat. § 510.01 (1986)*

■ Owens also claims it is a violation of Minn.Stat. § 510.01 for the trial court to forbid him to pledge his stock to Arnold & McDowell. This statute provides in pertinent part:

The house owned and occupied by a debtor as the debtor's dwelling place, together with the land upon which it is situated to the amount hereinafter limited and defined, shall constitute the homestead of such debtor and the debtor's family, and be exempt from seizure or sale under legal process on account of any debt not lawfully charged thereon in writing * * *.

Owens argues that because he is unable to pledge his stock, he is being improperly forced to rely upon his homestead to pay for his attorney. Owens conceded at oral argument he had no constitutional or statutory right to an attorney in this civil proceeding. The trial court noted that Owens has income of approximately $40,000 to

$45,000 per year from BRC. Owens' homestead has a value of $500,000, is unencumbered by a lien or mortgage, and is available as a source of a loan with which he could pay for legal services. The state is not seeking to seize or sell Owens' homestead to satisfy a debt here. Owens' claim under this statute, therefore, is inappropriate.

*Standing Of Arnold & McDowell and Baltimore Realty Company*

Owens argues that to deny BRC and Arnold & McDowell the right to participate in the proceeding destroyed the underlying equitable principles governing the granting of injunctive relief. Owens, however, has failed to show how *he* has standing to raise this issue on behalf of Arnold & McDowell. In fact, Owens has no legally-recognized interest in the affairs of Arnold & McDowell. *See Envall v. Independent School District No. 704*, 399 N.W.2d 593, 596 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. March 25, 1987) ("Initially, to establish standing to bring an action, a party must show some personal stake in the outcome of the controversy to assure adverseness and injury or threat of injury to a legally recognized, rather than personal, interest.").

Further, if BRC or Arnold & McDowell wanted to participate in the hearing, either could have filed a motion to intervene. In the absence of having filed such motion, neither should now be heard, through Owens, by this court to claim that they were not allowed to participate in that hearing.

DECISION

Affirmed.