AMF PINSPOTTERS, INC. v. HARKINS BOWLING, INC.

110 N. W. (2d) 348.

July 28, 1961—Nos. 38,210, 38,341.

*Joseph A. Maun, C. Paul Jones, John A. Murray,* and *Maun, Hazel & Busch,* for appellant.

*Benno F. Wolff, Richard G. Lareau,* and *Oppenheimer, Hodgson, Brown, Baer & Wolff,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

This action involves two appeals by defendant, Harkins Bowling, Inc., which we shall consider separately. The first is from orders of the district court (1) denying defendant's motion to dismiss the temporary restraining order and granting the motion of plaintiff, AMF Pinspotters, Inc., for a temporary injunction, and (2) denying defend-

ant's motion to vacate and dismiss the temporary injunction. The second appeal is from a district court order granting plaintiff's motion to strike defendant's antitrust defenses.

## Part I

Due to the somewhat prolonged procedural history of this case we shall chronologically review as briefly as possible the events leading up to this action and appeal. On August 3, 1953, plaintiff leased 24 automatic pinsetting machines and certain extra equipment to defendant, the operator of a bowling alley in St. Paul. The corporation is solely owned by Thomas J. Harkins, its president.

In 1959 a dispute arose concerning the payment for rentals and parts in regard to the 24 AMF-owned machines. In July of that year plaintiff sued defendant for $8,554.92, past-due rental, and $5,073.63 for repair parts sold to defendant. Defendant answered by alleging that the lease was void, unenforceable, and illegal because it violated the Sherman Anti-Trust Act, 15 USCA, §§ 1, 2, and the Clayton Act, 15 USCA, § 14, as well as the Minnesota antitrust statute, Minn. St. 623.01. It also generally denied allegations regarding repair parts sold.

According to defendant, agreements were reached in the first part of June 1960 between defendant and Carl A. and A. S. Ernst whereby defendant leased to the Ernsts that portion of its building formerly used for bowling and sold to the Ernsts the personal property it had formerly used including 24 bowling beds, shoes, balls, etc. Under the same agreement, the Ernst brothers were to manage the cocktail lounge for defendant. These agreements allegedly became effective July 1, 1960, but were not reduced to writing until July 9, 1960.

On June 10, 1960, defendant advised plaintiff that it was discontinuing its bowling alley business and requested plaintiff to remove its 24 machines by July 1, 1960, and that the lease would be terminated pursuant to paragraph 6(c) thereof. Paragraph 6(c) reads as follows:

"If Operator discontinues its bowling alley business at its establishment referred to in Schedule A hereof during the term of this Agreement (unless Operator transfers such business to others with AMF's consent), Operator may request AMF or AMF may elect to remove

the machines within a reasonable time to the manufacturer's factory or other place of storage designated by AMF at Operator's expense. Upon such removal and after payment of such expense and all rental for all periods to the end of the minimum rental year in which such removal occurs, this Agreement shall terminate and neither party shall have any further obligations hereunder."

On June 29, 1960, plaintiff refused to remove its machines. On July 1, 1960, plaintiff obtained a temporary restraining order and order to show cause, and writ of attachment against defendant's building. The restraining order enjoined defendant from damaging plaintiff's 24 pinsetting machines; from removing them from defendant's building; from replacing them with other pinsetting machines; and from transferring any of defendant's bowling alley business, including 24 bowling alleys, defendant's building, and any interest of defendant in the real estate involved.

Plaintiff's affidavit, based primarily on information and belief, on which the restraining order and writ of attachment were obtained, substantially states: That defendant intends to continue the operation of its bowling business on its premises; that it has negotiated with a competitor of plaintiff to replace plaintiff's machines; that defendant intends to remove the machines and replace them with others, thereby causing possible loss of or damage to plaintiff's machines, and causing further loss of future rentals under the lease, which damage would be impossible of computation; that the removal would violate the terms of the lease; that defendant is remodeling its bowling alley premises; that the danger of defendant's removing plaintiff's machines and installing new ones is imminent; that defendant is attempting to effect an apparent but not real discontinuance of its bowling alley business; that it intends to transfer its business and assets to persons acting in concert with it for the purpose of making any judgment that plaintiff might obtain ineffective; that this would cause irreparable harm to plaintiff; and that defendant is about to assign or dispose of its property with intent to delay or defraud its creditors.

On the other hand, sworn affidavits and responses on behalf of the defendant in support of its motion to vacate and dismiss the tem-

porary restraining order state: That defendant discontinued its bowling alley business July 1, 1960, and now its business consists of continuing to lease the basement of its building for a restaurant, barber shop, and billiard room, continuing to operate a cocktail lounge, and leasing without restriction as to use the rest of the building; that defendant has not negotiated with a competitor of plaintiff to replace plaintiff's machines but has discontinued its bowling alley business and has no intention of purchasing or leasing other pinsetting machines or replacing plaintiff's machines with others; that since plaintiff refused to remove its machines it is necessary for defendant to remove them in order to realize a reasonable return on its investment in its building; that no loss or damage to plaintiff's machines would occur by the removal of them by defendant or plaintiff; that plaintiff's lease terminated on July 1, 1960, subject to the payment of the cost of removal of the machines and other items to be decided in the present suit, so there can be no loss of future rentals. Defendant also claims that future rentals, if any, can be easily computed from the terms of the lease and that, in the light most favorable to plaintiff, future rentals would be $61,285.10.

In response to plaintiff's claim that the removal of the machines would violate the terms of the lease, defendant states that paragraph 6(c) of the lease specifically provides for the removal of the machines upon discontinuance of the bowling alley business; also that paragraph 6(i) prohibits the transfer of the machines and contract to others without plaintiff's consent, but that defendant cannot and does not intend to do this. Defendant further states it is remodeling its cocktail lounge but not its former bowling alley premises; that it will cause the removal of plaintiff's machines as soon as it is no longer enjoined by the court but has no intention of replacing them; that the discontinuance of its bowling alley business on July 1, 1960, was actual, and that it is now strictly a landlord with the exception of its cocktail lounge. Defendant further claims that no person or persons are acting in concert with it to make any judgment plaintiff may obtain ineffective and has no intention of doing so; that it is "more than solvent with an equity in its building of at least $400,000, and does not intend to defeat any legitimate claim."

Defendant on appeal assigns as error: That the trial court erred (1) in granting the motion of plaintiff for a temporary injunction and denying defendant's motion to dismiss the temporary restraining order; (2) in denying defendant's motion to dismiss the temporary injunction; and (3) in failing to find facts specially and to state separately its conclusions of law.

It appears to us that the principal question in connection with part one of this appeal is whether the plaintiff had an adequate remedy at law so as to eliminate the necessity for injunctive relief. An injunction will not issue where there is an adequate remedy at law. 9 Dunnell, Dig. (3 ed.) § 4472, and Minnesota cases cited.

Great caution and deliberation must be exercised by the trial court in the granting of an interlocutory injunction since the injunctive process is the strong arm of equity. The right to and the necessity for the granting or refusal of such an injunction lies largely within the discretion of the trial court, whose action will not be disturbed on appeal unless from the whole record it appears that there has been an abuse of such discretion. General Minnesota Utilities Co. v. Carlton County Co-op. Power Assn. 221 Minn. 510, 22 N.W. (2d) 673.

Injunctive relief should be awarded only in clear cases, reasonably free from doubt, and when necessary to prevent great and irreparable injury. The burden of proof rests upon the complainant to establish the material allegations entitling him to relief. 28 Am. Jur.; Injunctions, § 25.

Injunctions ought not to be granted in any case except where it is clear that any legal remedy the party may have is inadequate. 9 Dunnell, Dig. (3 ed.) § 4470.

An injunction will not issue to prevent an imagined injury which there is no reasonable ground to fear. The threatened injury must be real and substantial. J. F. Quest Foundry Co. v. International M. & F. Workers Union, 216 Minn. 436, 13 N. W. (2d) 32; 9 Dunnell, Dig. (3 ed.) § 4470, and cases cited.

The right to invoke the aid of equity is dependent upon a positive showing that a failure to grant injunctive relief will result in irreparable harm. Thomas v. Ramberg, 240 Minn. 1, 60 N. W. (2d) 18.

It is the position of the defendant that the plaintiff has an ade-

quate remedy at law for damages for breach of contract and is not entitled to injunctive relief. It contends that the damages here can be ascertained from the terms of the contract and that plaintiff has failed to show the absence of an adequate remedy at law.

Defendant argues that the leasing contract specifically states that the terms of the lease shall be for 10 years, or until a fixed number of rental units (games bowled) equals 120,000 times 24 (the number of machines in question); that the number of games bowled at defendant's place of business prior to the discontinuance of its bowling business on July 1, 1960, was known to the plaintiff and that the mathematical calculation of the future rentals to be lost, if any, is simple. Defendant further claims that at the maximum rate of 10¢ per game, as specified in the contract, the future rental would be $61,285.10, and that even before the machine leasing contract of plaintiff was amended, the amount of future rental, if any, could easily be calculated.

In support of its position defendant cites Cappetta v. Atlantic Refining Co. (2 Cir.) 74 F. (2d) 53, 98 A. L. R. 418, in which the court held that where damages arising from a breach of contract, entered into for monetary profit, can be ascertained, injunctive relief will not be granted.

Defendant also argues that it is more than solvent enough to pay damages if compelled to do so. It contends that it is entitled to a jury trial on the issues of fact in an action at law for damages where, as here, the ordinary processes of law, as distinguished from the extraordinary remedy by injunction, afford a sufficient remedy, and that plaintiff must proceed at law because to do otherwise would deprive defendant of its right to a jury trial.

On the other hand plaintiff argues that the orders of the trial court should not be disturbed in the absence of a showing that both of the trial judges clearly abused their discretion. It claims that the finding that defendant was about to commit acts which would tend to make any judgment recovered by the plaintiff ineffectual is supported by the record. It contends that the record discloses a reasonable probability that plaintiff will establish that the defendant is about to make an ineffective discontinuance and wrongful transfer of the bowling alley business in violation of plaintiff's right under its lease agreement, which

acts, if consummated, would prevent future effective enforcement of the agreement. It maintains that it was therefore proper for the trial judges to exercise their discretion to maintain the status quo until the trial by means of a temporary injunction.

Plaintiff also contends that the evidence supports the finding that the acts of the defendant would, if permitted during the litigation, work irreparable injury to the plaintiff and that the findings of fact and conclusions of law comply with the requirements of Rule 52.01, Rules of Civil Procedure, which latter point defendant denies. It is, therefore, plaintiff's position that the trial judges did not abuse their discretion and should be affirmed.

It would unduly prolong this opinion if we attempted a detailed discussion of the many arguments raised by both parties in their briefs and oral arguments before the court. In connection with part one of this appeal, we have examined the records and all matters presented to us and have come to the conclusion that under the facts and circumstances here plaintiff has an adequate remedy at law to protect any rights it may have in this litigation and that there was an abuse of discretion on the part of the trial court in granting the injunctive relief.

We can well understand why plaintiff would resist any wrongful attempt on the part of the defendant to remove plaintiff's machines and replace them with those of a competitor in violation of the terms of the contract. However, defendant claims that it is not acting in violation of the agreement between the parties but was discontinuing its bowling alley business. According to the record, defendant so notified plaintiff on June 10, 1960, and requested plaintiff to remove its 24 machines by July 1, 1960, pursuant to the lease, and plaintiff refused to remove the machines.

It is plaintiff's position that the defendant intends to continue the operation of the bowling alley business and has negotiated with a competitor of plaintiff to replace plaintiff's machines with other machines. Plaintiff also claims, among other things, that if this is done it will cause possible loss or damage to the machines valued in excess of $20,000, and that it will lose future rentals under the lease, which damages it cannot compute.

It is our opinion that we have a situation here where, in all fair-

ness to plaintiff, it has an adequate remedy at law and can be fully compensated for any damages it may recover from defendant in an action at law.

We are not satisfied here that plaintiff has made such a positive showing that a failure to grant it injunctive relief would result in irreparable harm, nor that its loss of future rentals and other purported damages cannot be computed in an action at law.

According to the record it appears that defendant has an equity of $400,000 in the building which plaintiff has attached and that defendant has also posted a $75,000 bond to cover damages, if any, to which plaintiff may be entitled.

We, therefore, hold in connection with part one of this appeal that there was an abuse of discretion on the part of the trial court and that injunctive relief should not have been granted plaintiff. The orders of the trial court in those matters appealed are in all respects reversed.

On appeal defendant not only sought reversal of the trial court's orders on part one but also requested a reference made to determine its damages including attorney fees.

While damages from a wrongful issuance of an injunction may be determined in an injunction suit, they are recoverable (unless the writ was procured by malice) only by action on the bond. Midland Loan Finance Co. v. Temple Garage Co. Inc. 206 Minn. 434, 288 N. W. 853; Steller v. Thomas, 232 Minn. 275, 45 N. W. (2d) 537; see, Minn. St. 585.04. Reasonable attorneys' fees may also be recovered. Nielsen v. City of Albert Lea, 87 Minn. 285, 91 N. W. 1113.

## Part II

Defendant also raised the following legal issue:

In an action for injunctive relief to enforce a contract which was executed by one party in Minnesota and the other party in another state through the use of United States mails, resulting in the interstate shipment of goods, does the state court have jurisdiction to entertain the defense that the contract is unenforceable because it violates the Federal Sherman Anti-Trust Act, 15 USCA, §§ 1, 2, and the Clayton Act, 15 USCA, § 14? The trial court held in the negative.

On appeal the defendant assigns as error the trial court's striking

that defense. In his order, the trial judge stated in a brief memorandum that: "It seems to me that General Talking Pictures Co. v. DeMarce, 203 Minn. 28, controls here."

Defendant argues that in an action to enforce a contract, the Minnesota state court has jurisdiction to entertain the defense that the contract is unenforceable because it violates the Sherman Anti-Trust Act and the Clayton Act. Plaintiff on the other hand contends that the lease agreement and sales involved herein were interstate transactions and whether they are an illegal restraint of trade must be determined under Federal rather than state law. It is plaintiff's position that General Talking Pictures Corp. v. DeMarce, 203 Minn. 28, 279 N. W. 750, makes it clear that the Minnesota antitrust law does not apply to interstate commerce. Plaintiff points out that the contract claimed in that case to have been made in violation of the Minnesota law had been signed outside the state and mailed into the state, as was the contract in the instant case. It, therefore, contends that our opinion in that case leaves no doubt that the validity or invalidity of the contract under the antitrust laws is, under such circumstances, to be determined under Federal law.

We have reviewed the authorities cited by the defendant in support of its position and conclude that under the record here General Talking Pictures Corp. v. DeMarce, *supra,* is controlling.

The district court is affirmed with respect to that issue.

Reversed as to part one, and affirmed as to part two.