**STATE of Minnesota, Respondent,**

v.

**Mark GARTENBERG, et al., Appellants.**

**No. CX–92–481.**

Court of Appeals of Minnesota.

Aug. 11, 1992.

Hubert H. Humphrey, III, Atty. Gen., David Woodward, Sp. Asst. Atty. Gen., St. Paul, for State of Minn.

Thomas S. Fraser, Anne M. Radolinski, Fredrikson & Byron, P.A., Fred Hollender, Minneapolis, for Mark Gartenberg, et al.

Considered and decided by SHORT, P.J., and FORSBERG, and SCHUMACHER, JJ.

## OPINION

SHORT, Judge

This matter arises from a statutory consumer fraud action involving a loan-brokerage business. The trial court issued a temporary injunction against Mark Gartenberg and his companies (brokers) which (a) prohibited the brokers from doing business or advertising their services in the State of Minnesota, (b) prevented the brokers from destroying business records or removing assets from the state, and (c) required the brokers to place all advance payments, fees

or charges collected from consumers in Minnesota into an interest-bearing account. On appeal, the brokers challenge only that part of the trial court's order which requires the escrow of funds. We reverse.

## FACTS

The brokers operated a loan-brokerage business in Edina, Minnesota from July until September of 1991. The Minnesota Attorney General brought this lawsuit alleging the brokers violated the Deceptive Trade Practices Act and the Consumer Fraud Act. *See* Minn.Stat. §§ 325D.43-.48 and 325F.68-.70 (1990). At a hearing on the state's motion for injunctive relief, the trial court found the brokers failed to disclose they were not lenders, misrepresented to consumers that advance payments would be applied to their loans, misrepresented interest rates and applicant acceptance rates, and failed to inform consumers about numerous non-refundable charges. The state obtained an attachment order which froze the brokers' two bank accounts in Minnesota. The trial court also enjoined the brokers' business activities in Minnesota. The brokers asked the trial court to modify its injunctive order by vacating paragraphs 10 and 11 which require the brokers to escrow funds prior to trial. The trial court declined to modify its order.

## ISSUES

I. Does the Deceptive Trade Practices Act or Consumer Fraud Act authorize a pre-judgment injunction which requires a party to escrow money damages?

II. Does the trial court have the inherent authority to issue a pre-judgment injunction which requires a party to escrow money damages?

## ANALYSIS

■ A temporary injunction is an extraordinary remedy designed to preserve the status quo until a trial on the merits can be held. *Wakefield v. Anchor Bancorp, Inc.*, 416 N.W.2d 814, 818 (Minn.App. 1987). In determining whether to issue a temporary injunction, the trial court must consider (a) the relationship between the parties; (b) the relative hardship; (c) the likelihood of success; (d) the public interest; and (e) any administrative burdens. *Dahlberg Brothers, Inc. v. Ford Motor Co.*, 272 Minn. 264, 274–75, 137 N.W.2d 314, 321–22 (1965). A trial court exercises its sound discretion in granting injunctive relief and its decision will not be disturbed on appeal unless there has been an abuse of discretion. *Cherne Industrial, Inc. v. Grounds & Assoc., Inc.*, 278 N.W.2d 81, 91 (Minn.1979). Absent exceptional circumstances, a trial court's failure to give findings of fact and conclusions of law when granting a motion for injunctive relief is an abuse of discretion. *See* Minn.R.Civ.P. 52.-01; *Wakefield*, 416 N.W.2d at 818–19.

### I.

■ The trial court did not make *Dahlberg* findings in this case. However, the state argues the trial court did not abuse its discretion by failing to apply common law injunctive relief criteria because paragraphs 10 and 11 of the trial court's order are authorized by two consumer statutes. First, the Deceptive Trade Practices Act prohibits misleading representations of fact in business. *See* Minn.Stat. § 325D.44. The statute provides:

> [a] person likely to be damaged by a deceptive trade practice may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable.

Minn.Stat. § 325D.45, subd. 1. *See Advanced Training Systems, Inc. v. Caswell Equip. Co., Inc.*, 352 N.W.2d 1, 11 (Minn. 1984).

And second, the Consumer Fraud Act prohibits false advertising in connection with the sale of any merchandise or service. *See* Minn.Stat. § 325F.69; *State v. Andrew Schoch Grocery Co.*, 193 Minn. 91, 92, 257 N.W. 810, 811 (1934) (discussing statute's purpose). The statute provides:

> [t]he attorney general * * * may institute a civil action in the name of the state in the district court for an injunction prohibiting any violation of sections 325F.68 to 325F.70. The court, upon

proper proof that defendant has engaged in a practice made enjoinable by section 325F.69, may enjoin the future commission of such practice.

Minn.Stat. § 325F.70, subd. 1.

Both statutes clearly authorize injunctive relief to prevent violation of the acts. However, the brokers do not challenge the trial court's order directing them to cease business operations in Minnesota or freezing their corporate assets. The brokers only challenge paragraphs 10 and 11 of the injunction. Those paragraphs enjoin the brokers from:

10. Failing to deposit, within two (2) business days after the issuance of this Temporary Injunction, in an interest bearing account at Marquette Bank Minneapolis, Sixth & Marquette, Minneapolis, Minnesota, all advance payments, fees or charges collected from consumers by defendants as a result of defendants' advance fee loan business practices since defendants began operations in Minnesota * * * *

11. Failing to provide, within five (5) business days of the entry of this Temporary Injunction, to the Attorney General a sworn affidavit showing that defendants have deposited in an interest bearing account at Marquette Bank Minneapolis * * *, all advance payments, fees or other money received by defendants from consumers as a result of defendants' advance fee loan brokerage business since such business started in Minnesota, and prior to September 19, 1991, which affidavit shall identify the amount of such funds transferred to the interest bearing account, the date the transfer was made and the number of the account to which the funds were transferred.

Neither consumer statute authorizes the trial court to order the brokers to escrow damages without a trial. We conclude paragraphs 10 and 11 are beyond the specific authority contained in the consumer acts.

## II.

■ The state also argues the trial court acted within its inherent equitable powers when it ordered the brokers to escrow funds before trial. We disagree. The state has failed to demonstrate that escrowing prejudgment funds is necessary to prevent irreparable injury. *See Cherne Industrial Inc. v. Grounds & Assoc.*, 278 N.W.2d 81, 92 (Minn.1979); *AMF Pinspotters, Inc. v. Harkins Bowling, Inc.*, 260 Minn. 499, 504, 110 N.W.2d 348, 351 (1961). The only injury claimed is loss of money. Where the state has obtained attachment orders freezing the brokers' bank accounts under Minn.Stat. §§ 570.01–.14 (1990), there is an adequate remedy at law.

■ The trial court's order requiring the brokers to escrow prejudgment monies does not prevent further injury by maintaining the status quo. The sole purpose of paragraphs 10 and 11 is to provide collateral for a potential judgment for past injuries. *See Allstate Sales and Leasing Co., Inc. v. Geis*, 412 N.W.2d 30, 32 (Minn. App.1987) (trial court abused its discretion in granting temporary injunction only to provide security for a potential judgment). Under these facts, the trial court abused its discretion and we must vacate paragraphs 10 and 11 of the order. In view of our decision, we need not address the remaining issues raised by the brokers.

## DECISION

There is no statutory or equitable basis for the trial court to order the brokers to escrow money damages without a trial. Under these circumstances, paragraphs 10 and 11 of the temporary injunction are vacated.

Reversed.