ST. JUDE MEDICAL, INC., Appellant,

v.

Heath CARTER, et al., Respondents.

A16-2015

Court of Appeals of Minnesota.

Filed July 10, 2017

Edward F. Fox, Kevin P. Hickey, Mark R. Bradford, Laurel J. Pugh, Bassford Remele, P.A., Minneapolis, Minnesota (for appellant).

Robert L. Schnell, Jr., Martin S. Chester, Blake J. Lindevig, Faegre Baker Daniels LLP, Minneapolis, Minnesota (for respondent).

Considered and decided by Bjorkman, Presiding Judge; Hooten, Judge; and Reyes, Judge.

## OPINION

HOOTEN, Judge

Appellant former employer challenges the district court's order dismissing its amended complaint, arguing that the district court erred by failing to award a remedy, specifically injunctive relief, after a jury and the district court found that appellant's former employee breached the noncompete provision of his employment contract. Appellant also contends that the district court erred by determining that appellant had abandoned or waived its claim for attorney fees against its former employee. We reverse and remand the case for further proceedings consistent with this opinion.

## FACTS

Appellant St. Jude Medical, Inc. (St. Jude), is a Minnesota corporation that engages in the research, development, marketing, and sale of medical devices, including electrophysiology (EP) products. EP products are used to evaluate heart rhythm disorders and treat diseases such as atrial fibrillation, atrial flutter, and ventricular tachycardia. These products are generally separated into two categories: EP capital products and EP disposable products. EP capital products include circuitry and software-based devices that interpret, digitize, and display electrical information collected from the heart. EP disposable products are accessory items that collect and measure electronic information produced by the heart and transmit such information to an EP capital product.

In 2007, St. Jude hired respondent Heath Carter, who signed an at-will employment contract. The employment contract contained two standard restrictive covenants: a noncompete clause and a confidentiality clause. The noncompete provision limited Carter's ability to work for any of St. Jude's competitors for one year after his employment at St. Jude ended. The provision stated:

> In the event of Employee's termination of employment for any reason, whether voluntary or involuntary, Employee, either personally or through an agent, servant, employee, partner, representative, affiliate or other entity, shall not for a period of one (1) year following termination, without the prior written consent of [St. Jude], directly or indirectly, seek or accept employment with or render services to any other person or entity that competes in any sense with [St. Jude] in connection with the design, development, manufacture, marketing or sale of any product, process or service that is being designed, developed, manufactured, marketed or sold by [St. Jude] and in which the Employee participated in the design, development, manufacture, marketing or sale during Employee's employment with [St. Jude].
>
> ... The preceding paragraph further specifically prohibits Employee from rendering services to any company where rendering such services would be expected to require or involve Employee's using or disclosing confidential information belonging to [St. Jude].

The confidentiality provision prohibited Carter from disclosing any of St. Jude's confidential information, including but not limited to information relating to the research, development, and pricing of St. Jude's products. The employment contract also contained a remedies provision, which provided:

> In the event Employee breaches the covenants contained in this Agreement, Employee recognizes that irreparable injury will result to [St. Jude], that [St. Jude's] remedy at law for damages will be inadequate, and that [St. Jude] shall be entitled to an injunction to restrain

the continuing breach by Employee, the Employee's partners, agents, servants or employees, or any other persons or entities acting for or with the Employee. [St. Jude] shall further be entitled to damages, reasonable attorney's fees, and all other costs and expenses incurred in connection with the enforcement of this Agreement, in addition to any other rights and remedies which [St. Jude] may have at law or in equity.

During his eight-year tenure at St. Jude, Carter held a variety of different positions. After spending several years performing preclinical research and product development testing on EP products, Carter assisted in redesigning St. Jude's website and was responsible for marketing St. Jude's EP capital products. Toward the end of his tenure, Carter also participated in research regarding one of St. Jude's EP disposable products.

In 2014, an employee at respondent Boston Scientific Corporation, who was Carter's former supervisor at St. Jude, contacted Carter regarding possible employment in a non-EP related position at Boston Scientific. St. Jude and Boston Scientific are direct competitors in the research, development, manufacture, marketing, and sale of EP products. Carter did not accept the position.

In June 2015, the former supervisor again contacted Carter, this time regarding an opening on Boston Scientific's marketing team for EP disposable products. On August 21, 2015, Carter voluntarily resigned from his position at St. Jude. He subsequently began employment at Boston Scientific, working as a senior product manager with the primary duty of overseeing the marketing of EP disposable products.

St. Jude learned the details of Carter's employment at Boston Scientific in October 2015 and asked Boston Scientific to provide assurances that his employment would not involve EP products during his one-year noncompete period and that he had not disclosed any of St. Jude's confidential information. Boston Scientific responded that Carter's position at Boston Scientific did not violate his noncompete obligations to St. Jude, claiming he worked with EP capital products at St. Jude, whereas at Boston Scientific his focus was on EP disposable products.

In December 2015, St. Jude filed suit against Carter and Boston Scientific (collectively respondents), alleging that Carter breached his employment contract with St. Jude and that Boston Scientific tortiously interfered with Carter's employment contract. St. Jude claimed that as a result of Carter's breach, it was entitled to injunctive relief and monetary damages, as well as attorney fees and costs against Carter, and damages for Boston Scientific's tortious interference.

St. Jude immediately sought a temporary injunction to prohibit Carter from continuing his employment with Boston Scientific. The district court denied this request, determining that St. Jude failed to demonstrate a reasonable likelihood of success on the merits and that, in considering the balance of harm to the parties, temporary injunctive relief was not justified.

After engaging in extensive discovery, the parties filed cross-motions for summary judgment. St. Jude specifically requested summary judgment on its breach of contract and tortious interference claims, seeking injunctive relief and attorney fees. The district court denied the parties' summary judgment motions and the case proceeded to jury trial. The parties stipulated before trial that the district court would address any issue regarding attorney fees in a separate proceeding un-

der Minn. R. Gen. Pract. 119.01, after the jury returned its verdict.

After a four-day jury trial regarding St. Jude's breach of contract and tortious interference claims, the jury answered two special verdict questions, finding that (1) Carter had breached his employment contract with St. Jude, but that (2) Boston Scientific had not intentionally caused Carter to commit the breach. Because St. Jude indicated prior to trial that it was not seeking monetary damages for Carter's breach of contract, but was instead seeking equitable relief, the jury was not asked to make findings regarding damages.

The parties then submitted proposed orders, and Carter moved for judgment as a matter of law or, alternatively, a new trial. The district court issued an order in November 2016, denying Carter's posttrial motions. In its order, the district court acknowledged that it was "bound" by the jury's finding and also "independently [found]" that Carter breached his employment contract. But, the district court determined that St. Jude was not entitled to injunctive relief and dismissed the amended complaint because St. Jude failed to establish at trial that it had suffered irreparable harm. The district court also concluded that St. Jude was not entitled to any monetary damages or attorney fees on its claim against Carter for breach of contract because it had expressly abandoned or waived those remedies. St. Jude appealed.

## ISSUES

I. Did the district court err by denying St. Jude's request for relief after the jury's finding that Carter had breached the noncompete provision of his employment contract?

II. Did the district court err by determining that St. Jude waived its request for attorney fees in its breach of contract claim against Carter?

## ANALYSIS

### I.

St. Jude argues that the district court erred by refusing to grant it any remedy, particularly injunctive relief, after the jury and district court found that Carter breached the noncompete provision of his employment contract. St. Jude maintains that the district court's refusal to award relief was reversible error because it ignored the remedies provision in the employment contract and violated established Minnesota law.

### A. Irreparable Harm and the Employment Contract's Remedies Provision

■ As an initial matter, the parties disagree as to the applicable standard of review. St. Jude proposes that we apply de novo review, arguing that the district court, after finding that Carter breached his employment contract, erred by not awarding the basic remedies provided for under the contract. Respondents, however, suggest that this court should apply an abuse of discretion standard because the decision to award or deny an injunction is within the district court's discretion. While we agree that ordinarily the decision to grant or deny an injunction is discretionary, *see Theros v. Phillips*, 256 N.W.2d 852, 859 (Minn. 1977) (stating that grant of permanent injunctions rests within "sound discretion" of district court), in this case, Carter entered into an employment contract with St. Jude that provided for monetary and equitable remedies in the event of a breach. Because the issue of whether St. Jude is entitled to a remedy, such as injunctive relief, as a result of Carter's breach of the employment contract necessarily involves interpreting the remedies

provision of the contract, we conclude that this issue presents a question of law, which we review de novo. *Halla Nursery, Inc. v. City of Chanhassen,* 781 N.W.2d 880, 884 (Minn. 2010) (stating that interpretation of a contract is a question of law that is reviewed de novo).

■ St. Jude claims that the district court erroneously ignored the remedies provision in the employment contract when it concluded that St. Jude did not suffer irreparable harm. The remedies provision explicitly states, "In the event Employee breaches the covenants contained in this Agreement, Employee recognizes that irreparable injury will result to [St. Jude] ... and that [St. Jude] shall be entitled to an injunction." We note that none of the parties contested the validity of this employment contract.[1]

■ We construe an employment contract to give effect to the parties' intentions as expressed by the language used in the contract. *Art Goebel, Inc. v. N. Suburban Agencies, Inc.,* 567 N.W.2d 511, 515 (Minn. 1997). We interpret the employment contract as a whole and attempt to harmonize all of its terms. *Chergosky v. Crosstown Bell, Inc.,* 463 N.W.2d 522, 525 (Minn. 1990). If the terms in the employment contract are unambiguous, we must give the terms their plain and ordinary meaning. *Hubred v. Control Data Corp.,* 442 N.W.2d 308, 310–11 (Minn. 1989). Because a presumption exists that the parties intend the language in the employment contract to have effect, we attempt to avoid construing the employment contract in a way that would render any of its provisions meaningless. *Chergosky,* 463 N.W.2d at 526.

St. Jude insists that the remedies provision is valid, and that at least during the one-year period commencing upon Carter's termination from St. Jude, the district court should have enforced this provision by awarding St. Jude injunctive relief against Carter. We agree.

St. Jude refers to several cases in support of its proposition that courts should look to and apply a contract's terms in the event of a breach. *See Agri Credit Corp. v. Liedman,* 337 N.W.2d 384, 385 (Minn. 1983) (reversing and remanding district court's order regarding attorney fee award because award was not in accordance with parties' agreement); *U.S. Fire Ins. Co. v. Minn. State Zoological Bd.,* 307 N.W.2d 490, 497 (Minn. 1981) (holding that district court erred in not finding state to be in default because such conclusion would render meaningless significant portion of contract, including provision governing default); *Morse v. Nagris,* 185 Minn. 266, 268–69, 240 N.W. 899, 900–01 (1932) (holding that letter of assurances did not relieve defendants from fulfilling obligations of contract and complying with contract's terms). Although these cases differ in both the facts and the contractual remedies sought, the underlying premise in all of them is that the court must enforce contractual provisions to prevent the provisions from becoming meaningless and to ensure that the non-breaching party does not lose the benefit of its bargain. *See Metro. Sports Facilities Comm'n v. Minn. Twins P'ship,* 638 N.W.2d 214, 223–25, 229–30 (Minn.App. 2002) (determining that district court did not abuse its discretion in granting temporary injunctive relief because monetary damages could not compensate non-breaching party for benefit of

---

1. Indeed, Boston Scientific's own remedies provision in its employment contract with Carter states, "Any breach of this Agreement is likely to cause Boston Scientific substantial and irrevocable damage and therefore ... Boston Scientific will be entitled to specific performance and other injunctive relief."

its bargain), *review denied* (Minn. Feb. 4, 2002).

Respondents characterize the remedies provision in the employment contract as "boilerplate language" and assert that the district court properly recognized that it was not binding. This argument is unpersuasive. Respondents fail to explain why the remedies provision is "boilerplate language" while other provisions in the employment contract are valid and enforceable. Indeed, the remedies provision in the employment contract between Carter and Boston Scientific is strikingly similar to the remedies provision at issue here. And, respondents fail to explain why the district court should not enforce this "boilerplate language," especially in light of Carter's own testimony that he understood the provisions in the agreement and believed that he was bound to follow them.

Both the jury and the district court found that Carter breached the noncompete provision in the employment contract. But, the district court nevertheless determined that St. Jude was not entitled to an injunction due to lack of evidence showing irreparable harm. Contrary to respondents' assertions, the district court did not address the question of whether the remedies provision in the employment contract required the district court to impose injunctive relief. Unlike the noncompete provision—which it quotes from the employment contract—or the confidentiality provision, the district court makes no mention of the remedies provision in its factual findings. And, the only reference to the remedies provision in the order's conclusions of law relates to the district court's decision that St. Jude waived its right to seek attorney fees in connection with its breach of contract claim against Carter. As discussed above, it is an established principle that the court should not make decisions that render contract provi-

sions meaningless. *Chergosky*, 463 N.W.2d at 526. The district court's failure to recognize the enforceability of the remedies provision in its analysis renders that provision meaningless and constitutes reversible error.

St. Jude also claims that the district court's refusal to impose an injunctive remedy violated clearly established Minnesota law regarding injunctive relief for breach of restrictive covenants in employment contracts. In order to receive an injunction, a party must demonstrate that legal remedies are inadequate and that the injunction is necessary to prevent irreparable injury. *Cherne Indus., Inc. v. Grounds & Assocs., Inc.*, 278 N.W.2d 81, 92 (Minn. 1979). "The threatened injury must be real and substantial." *AMF Pinspotters, Inc. v. Harkins Bowling, Inc.*, 260 Minn. 499, 504, 110 N.W.2d 348, 351 (1961). But, an inherent threat of irreparable harm may be inferred from the breach of a restrictive covenant, such as a noncompete or confidentiality covenant, and a court may impose at least temporary equitable relief. *Cherne*, 278 N.W.2d at 92; *see also Thermorama, Inc. v. Buckwold*, 267 Minn. 551, 552, 125 N.W.2d 844, 845 (1964). The *Cherne* court explained that "[i]f irreparable harm can be inferred from an alleged breach for purposes of a temporary injunction, it can be inferred from a [district] court's actual finding of a breach." 278 N.W.2d at 92. We agree with St. Jude that Carter's breach creates an inference of harm, and that the language in the employment contract appears to adopt, or is at least consistent with, Minnesota caselaw supporting this proposition.

The district court's failure to find irreparable harm, despite the language in the employment contract and caselaw articulating an inference of harm upon a finding of breach, resulted in the district court denying St. Jude any form of relief,

both during the pretrial litigation and after the jury verdict and district court finding of breach. The district court's conclusion that Carter breached the employment contract therefore amounted to nothing more than a "pyrrhic victory" for St. Jude. We conclude that the district court erred by denying St. Jude any relief after finding that Carter breached the employment contract.

## B. Extension of the Noncompete Provision Beyond the Restrictive Period

██ Respondents assert that even if St. Jude is entitled to an injunction, granting such injunctive relief beyond an expired noncompete period is only appropriate under special or exceptional circumstances that are not present in this case. *See Minn. Best Maid Cookie Co. v. Flour Pot Cookie Co.*, 412 N.W.2d 380, 385–86 (Minn.App. 1987) (stating that extending an injunction should be under "the special considerations envisioned in *Cherne*").

Carter voluntarily resigned from his position at St. Jude on August 21, 2015, triggering the one-year restrictive period, which then expired on August 21, 2016. The district court issued its posttrial order in November 2016, nearly three months after the noncompete provision's restrictive period expired. St. Jude maintains that this is nevertheless an appropriate case for the district court to enjoin Carter from working at Boston Scientific because St. Jude prevailed on its breach of contract claim and was denied any benefit from the noncompete covenant when the district court denied its request for a temporary injunction. A district court's grant or denial of an injunction is generally within its discretion, and we will not reverse unless the record as a whole reveals an abuse of discretion. *Cherne*, 278 N.W.2d at 91.

██ Because the district court incorrectly denied relief to St. Jude on the basis that it failed to show that it suffered irreparable harm, the district court did not decide the issue of what relief St. Jude was entitled to under the contract or principles of equity. Accordingly, we will not consider this issue here but rather will allow the district court to address this issue on remand. *See Wood v. Diamonds Sports Bar & Grill, Inc.*, 654 N.W.2d 704, 709 (Minn. App. 2002) (citing *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (declining to consider issue raised but not decided by district court)), *review denied* (Minn. Feb. 26, 2003). Injunctive relief based on a contract must generally correspond with the terms of the contract. *Id.* at 93. Consequently, we direct the district court on remand to consider the terms of the contract in deciding whether any injunctive relief based on the contract is warranted here. If the district court determines injunctive relief under the contract is not appropriate, the district court should consider whether to award equitable relief under its own discretion. *See Claussen v. City of Lauderdale*, 681 N.W.2d 722, 726 (Minn.App. 2004) ("Generally, the decision to grant equitable relief is within the sound discretion of the district court...."), *review denied* (Minn. Sept. 21, 2004).

## II.

██ St. Jude contends that the district court's conclusion that it waived its request for attorney fees, as part of its breach of contract claim against Carter, constitutes reversible error. Respondents disagree, arguing that St. Jude repeatedly made statements that demonstrated its intent to pursue attorney fees only for its tortious interference claim against Boston Scientific.

"The general rule in Minnesota is that attorney fees are not recoverable in litigation unless there is a specific contract permitting or a statute authorizing such recovery." *Dunn v. Nat'l Beverage Corp.*, 745 N.W.2d 549, 554 (Minn. 2008) (quotation omitted). We generally do not reverse a district court's decision regarding attorney fees unless the district court abused its discretion. *Carlson v. SALA Architects, Inc.*, 732 N.W.2d 324, 331 (Minn.App. 2007), *review denied* (Minn. Aug. 21, 2007). "[Appellate courts] review a district court's determination of waiver for clear error." *Seagate Tech., LLC v. W. Dig. Corp.*, 854 N.W.2d 750, 757 (Minn. 2014).

Based on the claims in its complaint, St. Jude was able to pursue two entirely distinct types of attorney fees in this case. First, St. Jude could seek attorney fees against Carter because the employment contract explicitly permits the recovery of attorney fees in the event of a breach. Second, St. Jude could also seek attorney fees against Boston Scientific as monetary damages if Boston Scientific committed tortious acts that thrust St. Jude into litigation with Carter. *See Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 363 (Minn. 1998) (providing that court may "award attorney fees as damages if the defendant's tortious act thrusts or projects the plaintiff into litigation with a third party").

The district court determined that St. Jude "unequivocally disavowed" its request for attorney fees in connection with its breach of contract claim against Carter. The district court reasoned that on several occasions throughout the litigation, St. Jude represented that it was not seeking attorney fees for its breach of contract claim but rather was only seeking *Kallok* attorney fees under its tortious interference claim against Boston Scientific.

Waiver occurs when a party voluntarily and intentionally relinquishes a known right. *Ill. Farmers Ins. Co. v. Glass Serv. Co.*, 683 N.W.2d 792, 798 (Minn. 2004). A party's waiver of a right requires the party's "knowledge of the right in question and the intent to waive that right." *Id.* There must be some expression of intent, not merely inaction. *Frandsen v. Ford Motor Co.*, 801 N.W.2d 177, 182 (Minn. 2011). Intent may be inferred from the facts and circumstances of the case. *Anderson v. Twin City Rapid Transit Co.*, 250 Minn. 167, 182, 84 N.W.2d 593, 603 (1957). The party alleging waiver has the burden of proving both knowledge and intent. *Frandsen*, 801 N.W.2d at 182.

First, the parties dispute what legal standard of proof is required to show that a party waived its right to attorney fees. St. Jude argues that the district court erred in failing to find an unequivocal waiver by clear and convincing evidence. We agree. Because the right to seek attorney fees is provided for in the employment contract, and therefore is a known contractual right, we conclude that respondents had the burden of presenting clear and convincing evidence showing that St. Jude intended to abandon this right. *See Republic Nat'l Life Ins. Co. v. Marquette Bank & Tr. Co.*, 295 N.W.2d 89, 93 (Minn. 1980) (explaining that party must prove by clear and convincing evidence other party's intention to abandon contractual right).

St. Jude asserts that the record reflects its clear intention to invoke the attorney fees portion of the remedies provision in the employment contract. In its December 2015 complaint, St. Jude claimed that due to Carter's breach of contract, it was entitled to "recover damages in an amount to be determined at trial, together with all of its costs, disbursements and attorneys' fees." St. Jude also alleged that Boston Scientific and Carter were jointly and severally liable to St. Jude for its attorney fees. Both of these allegations were re-

stated verbatim in St. Jude's March 2016 amended complaint. Moreover, in a stipulation filed approximately two weeks before trial, the parties agreed that "the issue of the amount of attorney fees will be submitted to the [district] [c]ourt in a separate proceeding consistent with General Rule of Practice 119 following any jury trial." And, there is no indication in the stipulation that the issue of attorney fees was limited to only *Kallok* attorney fees under St. Jude's tortious interference claim against Boston Scientific.

Respondents counter that St. Jude waived its right to seek attorney fees under the employment contract, referring first to St. Jude's submissions relating to summary judgment. They point to language in one of St. Jude's legal memoranda, in which St. Jude stated that it was seeking "injunctive relief for breach of restrictive covenants and fees for tortious interference," and that this is identical to the relief sought in *Kallok*.[2] Respondents highlight the following heading in the same memorandum: "St. Jude is Not Claiming Fees under Carter's Employment Agreement."

While these statements may on their own appear to suggest waiver, the statements must be read in the context of the entire proceeding. For instance, in response to respondents' motion for summary judgment, which argued that St. Jude could not recover attorney fees under the employment contract, St. Jude stated in the sentence immediately beneath the heading that respondents rely

on above that "[respondents] devote several pages of their memorandum to addressing a claim that is not in this case *at this time*." (Emphasis added.) St. Jude's memorandum also provided that it was "*currently* seeking an award of fees under *Kallok*," indicating that the attorney fees at issue in the summary judgment motion were attorney fees awardable as damages for St. Jude's tortious interference claim, not attorney fees against Carter under the employment contract. (Emphasis added.) Respondents' parsing of the summary judgment record does not reveal statements that clearly and unequivocally express the waiver of a contractual right to attorney fees.

Respondents also reference other pretrial memoranda as proof that St. Jude focused its request for attorney fees solely on its claim against Boston Scientific for tortious interference. In two pretrial memoranda, St. Jude asserted that it had "consistently claimed its attorneys' fees 'as damages' for being [compelled] to enforce its contract rights with Carter as a result of Boston Scientific's tortious interference" and that "it cannot be repeated enough that St. Jude seeks injunctive relief *and* traditional legal relief in the form of attorneys' fees as damages as a remedy for Boston Scientific's tortious interference." But on its face, these statements say nothing about whether St. Jude waived its right to seek contractual attorney fees for the breach of contract claim against Carter. And again we must look at these representations in context, not in isolation. St.

---

**2.** In a similar case regarding a noncompete provision in an employment contract, the company sued its former employee and its competitor for breach of contract and tortious interference, respectively. *Kallok*, 573 N.W.2d at 357. The district court enjoined the employee from working for the competitor for one year and determined that the competitor was liable to the company for damages as meas-

ured by attorney fees and other litigation expenses. *Id.* at 357–58. Upholding the district court's decision, the supreme court determined that if a third party interferes with a contract and causes the breach of that contract, a court may hold that party liable for any resulting damages, including attorney fees. *Id.* at 361–64.

Jude made these statements in response to Boston Scientific's contention that St. Jude was not entitled to a jury trial on its tortious interference claim, not as an unequivocal and intentional waiver of its right to seek contractual attorney fees against Carter.

Finally, respondents point to the statements of St. Jude's counsel at trial to argue that St. Jude knowingly and voluntarily waived its right to seek contractual attorney fees for Carter's breach. At the beginning of trial, the following exchange occurred between the district court and St. Jude's counsel:

COUNSEL: Your Honor, just to clarify for openings, so the breach of contract claim will not be on the special verdict form, except as an element of tortious interference, is that what you're saying?

THE COURT: That's how I see it right now. And I—because I think your breach of contract claim, you're only seeking equitable relief. It that true?

COUNSEL: That's true, Your Honor.

. . . .

THE COURT: And is it that—you're not asking for any money damages under the breach of contract claim, right?

COUNSEL: No, Your Honor.

. . . .

COUNSEL: Our position is that we're trying two claims, Your Honor, and that you would decide injunctive relief at the close of the trial. And we stipulated that you would decide damages on the tortious interference claim—

THE COURT: Okay.

COUNSEL: —at the close of trial.

These statements that St. Jude was only seeking injunctive relief for Carter's breach of the restrictive covenant appear to be consistent with St. Jude's position throughout the course of the litigation: it was only seeking injunctive relief rather than monetary damages against Carter. As discussed previously, St. Jude's counsel made these comments in the context of the impending trial regarding the breach of contract claim against Carter and a tortious interference claim against Boston Scientific with the understanding that the issue of attorney fees was going to be addressed in a separate proceeding after trial. Near the end of trial, the district court acknowledged that the issue of attorney fees was "looming" in the background.

None of the statements that respondents isolate from the record support a finding that St. Jude explicitly intended to waive its contractual right to attorney fees against Carter. Because the evidence in the record does not establish that St. Jude clearly and unequivocally disavowed its contractual right to seek attorney fees against Carter under its breach of contract claim, we conclude that the district court erred by deciding that St. Jude waived its right to pursue attorney fees for Carter's breach.

## DECISION

Because the district court failed to enforce the employment contract's remedies provision, we conclude that the district court committed reversible error by not awarding any form of relief to St. Jude. We reverse and remand to direct the district court to consider whether St. Jude is entitled to either an injunction beyond the employment contract's restrictive period, other appropriate relief under the contract or as a matter of equity, or both. And, because the record does not present any indication that St. Jude clearly and unequivocally waived its contractual right to seek attorney fees against Carter, the district court clearly erred by deciding that St. Jude disavowed this right. Accordingly, we reverse and remand to the district

court for consideration of St. Jude's request for attorney fees against Carter.

**Reversed and remanded.**