HUDSON, Justice.
Respondent St. Jude Medical sued appellants Heath Carter and Boston Scientific Corporation after Carter left his job at St. Jude to work for Boston Scientific. St. Jude alleged, in relevant part, that Carter had violated his Employment Agreement with St. Jude. The Agreement expressly stated that if Carter breached its terms, St. Jude would suffer irreparable injury, St. Jude's remedy at law for damages would be inadequate, and St. Jude would be entitled to an injunction against Carter and his new employer. The district court found that although Carter breached the Agreement, St. Jude failed to demonstrate that it would suffer irreparable harm from that breach, and was therefore not entitled to an injunction. The court of appeals reversed, concluding that the district court should have considered the terms of the Agreement when deciding whether to enjoin Carter, and that the district court had erred by denying St. Jude any relief. We conclude that the district court was not required to find irreparable harm based *681 solely on the language of a private agreement, and did not abuse its discretion by declining to grant an injunction in light of the absence of evidence of irreparable harm. We therefore reverse the court of appeals.
FACTS
This case centers on a dispute between St. Jude Medical (SJM) and its former employee Heath Carter. Carter began working for SJM in 2007, holding a variety of positions related to the company's electrophysiology (EP) products. EP products consist of two main types, capital products (large items intended for multiple uses over several years) and disposable products (small, inexpensive, single-use accessories to capital products). Carter worked with EP capital products at SJM, including working as part of a marketing team for 3 years before his departure.
As part of his employment with SJM, Carter signed an Employment Agreement that included a non-disclosure covenant, a non-competition covenant, and a remedies clause. The remedies clause stated, in relevant part, that "[i]n the event [Carter] breaches the covenants contained in this Agreement, [he] recognizes that irreparable injury will result to SJM, that SJM's remedy at law for damages will be inadequate, and that SJM shall be entitled to an injunction to restrain the continuing breach by [Carter]."
In August 2015, Carter resigned his position at SJM and began working for Boston Scientific Corporation. SJM and Boston Scientific are competitors in a variety of markets and product areas, including both capital and disposable EP products. At Boston Scientific, Carter's marketing role focuses on EP disposable products, rather than EP capital products. During the 1-year non-competition period, Boston Scientific instructed Carter not to be involved in any marketing of EP capital equipment, and prohibited him from interacting with customers.
SJM filed suit against Carter and Boston Scientific in December 2015, alleging in relevant part that "Carter materially breached his Employment Agreement with SJM in violation of his noncompetition covenant by accepting employment with and working in a directly competitive position for Boston Scientific." In addition, SJM claimed that "Carter's employment in a directly competitive marketing management position with Boston Scientific also creates a direct risk and imminent threat that he either already has or will necessarily disclose, exploit and/or use SJM's Confidential Information on behalf of Boston Scientific to SJM's detriment, in violation of his Employment Agreement." As the district court noted, "SJM specifically and repeatedly disavowed any claim for money damages based on its breach of contract claim" against Carter, seeking "only an injunction."
After a trial, the jury returned a divided verdict. The jury found that Carter had breached the Agreement, but that Boston Scientific did not intentionally cause the breach. The district court adopted the jury's findings as its own and received additional briefing from the parties regarding SJM's request for equitable relief. The district court also found that "[e]ven if the Court was not bound by the jury's finding that Mr. Carter breached his Employment Agreement, ... the Court independently finds that Mr. Carter breached his Employment Agreement" by "working with Boston Scientific's competing EP disposable products within one year of leaving SJM."
The district court, citing Cherne Industrial, Inc. v. Grounds & Associates, Inc. , 278 N.W.2d 81, 92 (Minn. 1979), held that SJM, as the party seeking permanent injunctive *682 relief, "must demonstrate a clear threat of irreparable harm in the absence of such relief." SJM argued that it met its burden and was entitled to injunctive relief for Carter's breach of the Agreement, because irreparable harm could be inferred from Carter's breach of the non-competition covenant. Carter and Boston Scientific argued that SJM had failed to demonstrate irreparable harm, and that irreparable harm could not be inferred in this case.
The district court concluded that "SJM was unable to establish that it has been harmed by Mr. Carter's breach of his Employment Agreement." The court noted that although an inference of irreparable harm may be justified in some cases of breach of a restrictive covenant, the evidence in this case did not support such an inference. The court found that "SJM was unable to prove that Mr. Carter disclosed any confidential information or that it sustained any monetary damages," noting the lack of proof of disclosure or likelihood of future disclosure despite "extensive discovery." Accordingly, the district court declined to grant injunctive relief, stating that it would "not issue an injunction based on the speculative fear of possible disclosure that is unsupported by the evidence."
The court of appeals reversed and remanded to the district court to reconsider SJM's right to equitable relief under the Agreement. St. Jude Med., Inc. v. Carter , 899 N.W.2d 869, 880-81 (Minn. App. 2017). Focusing on the importance of giving effect to the parties' intention as expressed in the language of the Agreement, the court of appeals stated that "the [district] court must enforce contractual provisions to prevent the provisions from becoming meaningless and to ensure that the non-breaching party does not lose the benefit of its bargain." Id. at 875. The court of appeals concluded that the district court "fail[ed] to recognize the enforceability of the remedies provision in its analysis" and as a result, "render[ed] that provision meaningless." Id. at 876. The court of appeals held that "at least during the one-year period commencing upon Carter's termination from St. Jude, the district court should have enforced [the remedies] provision by awarding St. Jude injunctive relief against Carter." Id. at 875. Accordingly, the court of appeals directed the district court to consider on remand decisions in which an inference of harm was found upon a finding of a contract breach, as well as the remedies provision of the Agreement. Id. at 876-77.
We granted Carter's petition for review to consider whether the district court was required to grant injunctive relief because the terms of the Agreement entitle SJM to an injunction based on a presumption of irreparable harm.[1]
ANALYSIS
I.
This case requires us to answer a legal question: what effect does a contract provision that addresses the availability of equitable relief have on a district court's exercise of its equitable powers? We review such purely legal questions de novo. Minn. Laborers Health & Welfare Fund v. Granite Re, Inc. , 844 N.W.2d 509, 513 (Minn. 2014).
In most cases, our primary goal in contract interpretation is to "enforce the intent of the parties."
*683 Valspar Refinish, Inc. v. Gaylord's, Inc. , 764 N.W.2d 359, 364 (Minn. 2009). Because the intent of the parties is typically determined from the plain language of a written contract, Travertine Corp. v. Lexington-Silverwood , 683 N.W.2d 267, 271 (Minn. 2004), we generally "enforce the agreement of the parties as expressed in the language of the contract," Dykes v. Sukup Mfg. Co. , 781 N.W.2d 578, 582 (Minn. 2010).
When equitable considerations are present, we will consider factors beyond the intent of the parties, no matter how unambiguously that intent may be expressed in a contract provision. For example, in the context of liquidated damages provisions, we have stated:
In determining the issue [of whether to enforce a provision for liquidated damages] neither the intention of the parties nor their expression of intention is the governing factor. The controlling factor, rather than intent, is whether the amount agreed upon is reasonable or unreasonable in the light of the contract as a whole, the nature of the damages contemplated, and the surrounding circumstances.
Gorco Constr. Co. v. Stein , 256 Minn. 476, 99 N.W.2d 69, 74 (1959).
We have long placed limits on the issuance of an injunction because of the equitable nature of this remedy. An "[i]njunction will not be granted to enforce the provisions of a contract unless the court is satisfied that the enforcement will be just and equitable and will not work hardship or oppression." Menter Co. v. Brock , 147 Minn. 407, 180 N.W. 553, 555 (1920). Therefore, to be granted a permanent injunction, a party must show that any remedy at law would be inadequate and that an injunction "is necessary to prevent great and irreparable injury." Cherne Indus., Inc. v. Grounds & Assocs., Inc. , 278 N.W.2d 81, 92 (Minn. 1979) (citations omitted); see also AMF Pinspotters, Inc. v. Harkins Bowling, Inc. , 260 Minn. 499, 110 N.W.2d 348, 351 (1961) ("Injunctive relief should be awarded only in clear cases, reasonably free from doubt, and when necessary to prevent great and irreparable injury.... Injunctions ought not to be granted in any case except where it is clear that any legal remedy the party may have is inadequate." (citations omitted) ).
SJM contends that the Agreement established both of these elements, because the unambiguous terms of the Agreement state that "irreparable injury will result to SJM" upon a breach by Carter, "that SJM's remedy at law for damages [for that breach] will be inadequate, and that SJM shall be entitled to an injunction to restrain" any further breach by Carter. But we require that parties do more than incorporate terms into a contract to demonstrate a right to invoke the aid of a court's equitable powers. See AMF Pinspotters , 110 N.W.2d at 352 ("The right to invoke the aid of equity is dependent upon a positive showing that a failure to grant injunctive relief will result in irreparable harm."); see also Thomas v. Ramberg , 240 Minn. 1, 60 N.W.2d 18, 21 (1953). Allowing the terms of private agreements to dictate whether a court must issue an injunction would interfere with a court's equitable jurisdiction and powers. See James M. Fischer, Understanding Remedies 864 (2d ed. 2006) (explaining that courts traditionally resist parties' efforts to control the exercise of equitable powers because "the court should reserve the right to preserve its jurisdiction and authority and to limit the exercise of its power, particularly injunctive relief, to those situations that the court believes are consistent with the public interest"); see also Restatement (Second) of Contracts § 359 cmt. a (Am. Law. Inst. 1981) ("Because the availability of equitable relief *684 was historically viewed as a matter of jurisdiction, the parties cannot vary by agreement the requirement of inadequacy of damages, although a court may take appropriate notice of facts recited in their contract.").
The decision to exercise equitable powers belongs to the court. Those powers are not deployed based solely on the language of a private agreement because parties do not have the capacity to direct the court's exercise of equitable powers. A private agreement is just that: private. It cannot resolve the legal questions that require an exercise of judicial authority, such as whether a remedy at law would be inadequate, or whether an irreparable injury exists that requires equitable relief. Legal questions regarding whether the requirements for equitable relief have been met are for the court to decide in the context of the facts of a specific case and a specific dispute. The decision to exercise a court's equitable authority-or not to do so-rests with a judge, not in drafting decisions made in contract negotiations. See, e.g. , DeLa Rosa v. DeLa Rosa , 309 N.W.2d 755, 758 (Minn. 1981) (explaining that a court has "inherent power to grant equitable relief" based on the facts and circumstances of the individual case).
Accordingly, we hold that the district court was not required by the terms of the Agreement between SJM and Carter to conclude that the requirements for issuance of an injunction had been met. The district court was not required to find that SJM's remedy at law would be inadequate, nor that irreparable harm would result. Rather, the district court's proper role was to fully consider whether SJM's legal remedies were clearly inadequate, and whether an injunction was "necessary to prevent great and irreparable injury." See AMF Pinspotters , 110 N.W.2d at 351.
II.
Given our holding that the district court was not required to exercise its equitable authority simply by reason of the contract language, we next evaluate whether the district court erred by declining to grant a permanent injunction in this case. "The granting of an injunction generally rests within the sound discretion of the trial court, and its action will not be disturbed on appeal unless, based upon the whole record, it appears that there has been an abuse of such discretion." Cherne Indus. , 278 N.W.2d at 91 (citing AMF Pinspotters , 110 N.W.2d at 351 ). Our review of the district court's decision is deferential. "We give deference to a district court's equitable determinations because the court acts like a fact-finder, weighing all relevant factors and considering the unique facts of each case.... [T]he district court is in the best position to analyze the facts and balance the relevant factors." Melrose Gates, LLC v. Chor Moua , 875 N.W.2d 814, 819 (Minn. 2016). The burden of proof is on the party seeking an injunction to "establish that [the] legal remedy is not adequate, and that the injunction is necessary to prevent great and irreparable injury." Cherne Indus. , 278 N.W.2d at 92.
Irreparable injury can be "actual or threatened." Peterson v. Johnson Nut Co. , 204 Minn. 300, 283 N.W. 561, 565 (1939). However, the party seeking a permanent injunction must show that "irreparable injury has resulted, or will in all probability result," Menter Co. , 180 N.W. at 554, and "[t]he threatened injury must be real and substantial," AMF Pinspotters , 110 N.W.2d at 351 (citation omitted). The burden is not insignificant: the party must show that irreparable injury is likely , not just possible. See *685 J. F. Quest Foundry Co. v. Int'l Molders & Foundry Workers Union of N. Am., Local No. 132 , 216 Minn. 436, 13 N.W.2d 32, 35 (1944). A concern about the possibility of future harm will not suffice because "[t]he purpose of [the] injunctive process is not to allay a litigant's fears or apprehensions." Id.
Yet there are circumstances in which it may be appropriate for a district court to infer irreparable harm. We have recognized that these circumstances include situations where customer good will is at stake, when an employee takes business secrets with an intent to benefit from the secrets, or when a risk exists that the secrets will be disclosed in the subsequent employment and result in irreparable damage. Menter Co. , 180 N.W. at 554. Breach of a covenant not to compete, standing alone, "does not so readily indicate irreparable injury to the employer. Injury is not shown by the mere fact that the employee has left the service and has entered the employ of a rival concern." Id. We are cautious about enjoining former employees due to the risk of constraining their ability to make a living; thus, we require "some proof of irreparable damage ... to be adduced in such a case before equitable relief by way of injunction will issue." Id. at 555 (emphasis added); see also J. F. Quest Foundry Co. , 13 N.W.2d at 35 ("Some irremediable damage must be shown to establish a case for equitable relief.").
Here, the district court noted the lack of evidence of actual harm. Indeed, the court found that "SJM concede[d] that actual disclosure of confidential information did not occur." In the absence of evidence of actual harm, SJM must depend on an inference of harm to support its request for an injunction. SJM must show more than the breach of the restrictive covenant, and it cannot satisfy its burden of proof to support an inference of harm by relying solely on Carter's departure to work for a competitor. Further, there is no evidence that Carter took business secrets when he left SJM, and SJM does not contend that customer goodwill is at stake. SJM has not offered any proof that the circumstances here fall within the types of situations that we have previously stated may justify an inference of irreparable harm.
Nor is the language of the Agreement sufficient to establish an inference of irreparable harm. Although a court may consider contractual provisions when evaluating whether to infer harm, the Agreement adds little to SJM's case for an inference beyond a bare assertion that SJM would suffer irreparable harm. Despite SJM's contentions, the language of the Agreement does not establish that SJM is entitled to an inference of harm.
Furthermore, even if SJM had met its burden for an inference of irreparable harm, such an inference can be rebutted by evidence to the contrary. Cf. Thomas , 60 N.W.2d at 20-21 ; Menter Co. , 180 N.W. at 555. The district court's findings make clear that any inference of irreparable harm that might be made was rebutted by the evidence offered by Carter and Boston Scientific. After weighing all relevant factors and considering the unique facts, the district court concluded that SJM's "argument of inevitable disclosure is belied by the facts." The district court found that the possibility of disclosure was not "as likely and realistic as SJM suggests" and concluded that SJM had only a "speculative fear of possible disclosure that is unsupported by the evidence." Based on these findings, SJM was not entitled to an inference of harm.
SJM argues that the district court erred in making these determinations because the court would have had to ignore the Agreement's language regarding the irreparable harm that is presumed to result *686 from Carter's contract breach.[2] It is true that the district court did not explicitly quote the remedies provision in its order, and did not expressly state that it declined to enforce that provision. But this omission alone does not necessarily indicate that the district court failed to consider the provision. To the contrary, it is equally possible that the district court considered the contractual presumption in that provision rebutted because it found SJM's claim of "inevitable disclosure belied by the facts." Further, SJM discussed the remedies provision in its post-trial submissions, asserting that the court could not "disregard the plain language" of the parties' contract, which, in addition to designating the remedy (an injunction), relieved SJM of the burden of showing that "real or substantial" irreparable injury had or was likely to result. SJM also urged the district court to find, based on the contract language, that "Carter's noncompetition covenant with SJM does not require actual disclosure."
Thus, the remedies provision was squarely before the district court. Equally clear, the district court did not accept these arguments when directly requested to do so. Given the detailed nature of the district court's order, the only logical conclusion is that the district court considered and rejected these arguments when it concluded that SJM failed to demonstrate the necessary irreparable harm. Cf. Buro v. Morse , 183 Minn. 518, 237 N.W. 186, 187 (1931) (explaining that where the plaintiff asked the court to make certain findings and the court had refused the request, the court's refusal was "equivalent to a finding negativing the facts requested to be found").
It would have been preferable for the district court to have explicitly discussed the remedies provision in its Findings of Fact and Conclusions of Law. But we do not require a district court to expressly acknowledge and address every argument made. After weighing the relevant factors and considering the unique facts of this case, the district court found that "an inference that SJM will suffer irreparable harm in the absence of an injunction is not supported by the evidence. SJM was unable to establish that it has been harmed by Mr. Carter's breach of his Employment Agreement." We cannot conclude that this decision is against facts in the record or based on an erroneous view of the law. After considering the whole record, we see no abuse of discretion in the district court's decision not to draw an inference that SJM faced irreparable harm.[3]
CONCLUSION
For the foregoing reasons, we reverse the decision of the court of appeals.
Reversed.
THISSEN, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

The court of appeals also held that the district court erred in finding that SJM intended to waive its right to seek attorney fees from Carter. 899 N.W.2d at 880. Carter did not seek review of this portion of the court of appeals' decision, and therefore it is not before us.

The court of appeals, appearing to agree with this argument, "direct[ed] the district court on remand to consider the terms of the contract in deciding whether any injunctive relief based on the contract is warranted here," noting that "the district court makes no mention of the remedies provision in its factual findings." St. Jude Med. , 899 N.W.2d at 876, 877.

The court of appeals disagreed, stating that "the district court erred by denying St. Jude any relief after finding that Carter breached the employment contract." St. Jude Med. , 899 N.W.2d at 877. However, SJM specifically disclaimed damages as a remedy. SJM was denied relief because it did not demonstrate that it was entitled to an injunction-the only relief it sought. This strategy does not make the court's proper refusal to issue an injunction erroneous. Given SJM's failure to meet its burden to demonstrate great and irreparable injury, it was not an abuse of discretion for the district court to decline to grant an injunction.